Docket No. 99756.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
MICHAEL TAYLOR, Appellee.

*Opinion filed May 18, 2006.*

CHIEF JUSTICE THOMAS delivered the judgment of the
court, with opinion.

Justices Freeman, McMorrow, Fitzgerald, Kilbride, Garman,
and Karmeier concurred in the judgment and opinion.

## OPINION

This appeal presents the question of whether a minor who
has been adjudicated delinquent in proceedings conducted

under article V of the Juvenile Court Act of 1987 (hereinafter, the Juvenile Court Act or Act) (705 ILCS 405/5–101 *et seq.* (West 1998)) is considered a "person convicted of a felony" for purposes of the offense of escape as set forth in section 31–6(a) of the Criminal Code of 1961 (hereinafter, the Code or the escape statute) (720 ILCS 5/31–6(a) (West 1998)).

## BACKGROUND

On the evening of December 23, 1998, defendant was a 16-year-old juvenile incarcerated at the Audy Home, a juvenile temporary detention center located in Cook County. On that night, Terrance Willis, who was also a juvenile incarcerated at the facility, escaped from his cell and cut the throat of a detention center counselor. Defendant was locked in his cell during the attack, but Willis took the jail keys from the stricken counselor and opened defendant's cell. According to eyewitness testimony, defendant then aided Willis in shoving the counselor into a cell and locking it. Defendant and Willis were apprehended a short time later after they had fled in separate directions.

Pursuant to the Juvenile Court Act, the juvenile division of the circuit court of Cook County held a discretionary-transfer hearing in connection with the December 23, 1998, incident. The court transferred defendant to the jurisdiction of the criminal division on December 20, 1999, on charges of attempted first degree murder, attempted escape, aggravated battery and aggravated unlawful restraint. The cause then proceeded to a jury trial on these charges.

To prove one of the elements of the attempted escape charge–*i.e.*, that defendant was a "person convicted of a felony" at the time of the attempted escape–the State introduced a certified copy of a finding of delinquency entered by the juvenile court on August 7, 1998, that was based on an allegation that defendant had committed a robbery. The record shows that following a dispositional hearing on this delinquency adjudication for robbery, the juvenile court committed defendant to the Department of Corrections, Juvenile Division. Consequently, defendant was incarcerated at the Audy Home on December 23, 1998, awaiting transport to the Department of

Corrections, Juvenile Division, when the events that formed the present criminal charges took place.

Defendant testified at his criminal trial that he was asleep at the time Willis broke out of his cell on December 23, 1998, that defendant had no plan to escape, and that he was ordered out of his cell. He denied participating in putting the counselor in the cell, but instead claimed that he ran to the bathroom first and then to summon help for the counselor.

At the completion of his jury trial, defendant was convicted of the offenses of attempted escape, aggravated battery and unlawful restraint, but was acquitted of the attempted first degree murder count. The trial court sentenced him to five years in prison on the attempted escape charge to run concurrently with sentences of five years' and three years' imprisonment on the other two charges.

Defendant appealed, and the appellate court reversed. 353 Ill. App. 3d 462. The State conceded before the appellate court that defendant did not commit the substantive offenses of aggravated battery and aggravated unlawful restraint. Instead the State argued that defendant was guilty of these charges on an accountability theory for his participation in the escape. Because defendant's accountability on these two charges depended on whether he was guilty of the escape attempt, the appellate court first examined the escape charge. It noted that the escape statute requires as an element of the offense that a defendant must be a "person convicted of a felony" or "charged with the commission of a felony" at the time of the offense. 353 Ill. App. 3d at 471. It then concluded that defendant's delinquency adjudication was not a "conviction" for purposes of the escape statute. 353 Ill. App. 3d at 472-75. Accordingly, the appellate court held that under the plain language of the escape statute, defendant could not be found guilty of the offense of escape as a matter of law. 353 Ill. App. 3d at 475. We allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315(a).

ANALYSIS

Before this court, the State contends that the term "conviction" as defined in the Code is ambiguous. According to the State, the Code must be read *in pari materia* with various provisions of Juvenile Court Act to find a legislative intent to punish a juvenile for any escape attempt from a penal institution.[1] Specifically, the State points out that the term "delinquent minor" under the Juvenile Court Act means "any minor who prior to his or her 17th birthday has violated or attempted to violate, regardless of where the act occurred, any federal or State law, county or municipal ordinance." 705 ILCS 405/5–105(3) (West 1998). Moreover, proceedings under the Act may be instituted for such violations, unless the Act requires that the minor be prosecuted criminally. 705 ILCS 405/5–120 (West 1998). The State contends that section 5–130 of the Act requires that all escape attempts be prosecuted criminally, rather than in a juvenile proceeding. See 705 ILCS 405/5–130 (West 1998). According to the State, the appellate court's interpretation of the escape statute would lead to an absurdity if an adjudication is not considered a "conviction," because then a minor who attempts to escape from confinement following a juvenile adjudication would not be subject to prosecution under either the criminal laws or the Juvenile Court Act.

The State's argument raises a question of statutory interpretation, and the principles governing our analysis are well known. The construction of a statute is an issue that is reviewed *de novo. In re Michelle J.*, 209 Ill. 2d 428, 434 (2004). Courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *People v. Davis*, 199 Ill. 2d 130, 135 (2002). But our inquiry must always begin with the language of the statute itself, which is the surest and most reliable indicator

---

[1]The doctrine of *in pari materia* provides that when two statutes deal with the same subject, they will be considered with reference to each other to give them a harmonious effect. *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees*, 218 Ill. 2d 175, 185 (2006), quoting *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002).

of the legislature's intent. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). When the language of a statute is clear, it must be applied as written without resort to further aids or tools of interpretation. *In re R.L.S.*, 218 Ill. 2d 428, 433 (2006). Furthermore, criminal or penal statutes are to "be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute." *People v. Laubscher*, 183 Ill. 2d 330, 337 (1998). We cannot, under the guise of statutory interpretation, remedy an apparent legislative oversight by rewriting a statute in a way that is inconsistent with its clear and unambiguous language. *Pullen*, 192 Ill. 2d at 42. However, if the language of a statute is ambiguous, we may look to tools of interpretation–such as the doctrine of *in pari materia*–to ascertain the meaning of a provision.

The statute at issue here is the escape statute, which provides that "[a] person convicted of a felony or charged with the commission of a felony who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony." 720 ILCS 5/31–6(a) (West 1998). Under the statute's plain language, proof of a prior felony conviction is an element of the offense of escape in the present circumstances.[2] See *People v. McCollum*, 72 Ill. App. 3d 174, 176 (1979). The question before us, then, is whether a juvenile adjudication can be considered a felony conviction for purposes of this statute. The term "conviction" is specifically defined by the Code in the general definitions contained in Article II (see 720 ILCS 5/2–5 (West 1998)) and that definition governs our inquiry, as the words and phrases defined in article II have the same meaning throughout the Code as is designated in article II unless the context clearly requires a different meaning (720 ILCS 5/2–5 (West 1998)). Section 2–5 of the Code states as follows:

---

[2]Proof that a person is in custody on a charge of committing a felony at the time of the escape is an alternative element, but the State does not charge this element and it is not at issue in this case. See 720 ILCS 5/31–6(a) (West 1998).

" 'Conviction' means a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." 720 ILCS 5/2–5 (West 1998).

Under both the plain language of this statute and the various provisions of the Juvenile Court Act cited by the State, juvenile adjudications are not mentioned as being included in the Code's definition of conviction. Nor has any Illinois case ever held that a juvenile adjudication constitutes a criminal conviction–although Illinois cases have specifically held that juvenile adjudications do not constitute convictions. See *In re W.W.*, 97 Ill. 2d 53, 57 (1983); *People v. Rankin*, 297 Ill. App. 3d 818, 824 (1998). Additionally, we emphasize that the escape statute requires a prior *felony* conviction, not merely a conviction. We simply do not believe that the term "person convicted of a felony" can be read to include juvenile adjudications under the plain meaning of the existing statutory framework at issue here, especially when the nature of such adjudications are closely examined in comparison with the statutory language.

The Code's definition of "conviction" has two basic parts, both of which must be satisfied for a conviction to take place. The first clause requires a judgment or sentence entered upon a *plea of guilty* or upon a *verdict or finding of guilty* of an offense. The second clause requires that any verdict or finding of guilty must be rendered by a *jury or a court authorized to try the case without a jury*. Neither part of the definition has been satisfied under the facts of this case.

With respect to the first clause, we note that defendant was adjudicated delinquent on August 7, 1998, on an allegation of robbery. This is the predicate offense that is supposed to serve as his prior felony conviction for purposes of the escape charge. The Juvenile Court Act, however, did not provide for a "plea of guilty" or a "finding of guilty" of an offense at the time that defendant was adjudicated delinquent on an allegation of robbery in August 1998. Nor did the Act provide for a "sentence." Instead a minor named in a delinquency petition in

1998 was merely subject to "an adjudicatory hearing," after which the juvenile court judge was to "make and note in the minutes of proceeding a finding of whether or not the minor is *delinquent*." (Emphasis added.) 705 ILCS 405/5–20 (West 1996). Thereafter, the cause did not proceed to "sentencing" but rather to a "dispositional hearing" where the court was to determine whether "it is in the best interests of the minor and the public that he be made a ward of the court." 705 ILCS 405/5–20 (West 1996). If the court determined that the minor should be made a ward of the court, it was then incumbent on the court to determine the proper disposition best serving the minor and the public. 705 ILCS 405/5–22 (West 1996). The kinds of dispositional orders that the court could enter were listed in section 5–23 of the Act. Upon comparing the language of the Juvenile Court Act in effect in 1998 with the Code's definition of "conviction," it is clear that defendant's 1998 juvenile adjudication did not satisfy the first part of the definition of "conviction" under the Code because he was not found guilty and sentenced, but was instead adjudicated delinquent and then subjected to a dispositional order.

The Juvenile Court Act was radically altered, however, after the date of defendant's August 7,1998, delinquency adjudication and after the alleged offenses were committed in the present case. The General Assembly amended the Act with Public Act 90–590, effective January 1, 1999. 705 ILCS Ann. 405/5–101 *et seq.* (Smith-Hurd 1999). The amendatory changes renumbered the sections and largely rewrote article V of the Act to provide more accountability for the criminal acts of juveniles and, from all appearances, to make the juvenile delinquency adjudicatory process look more criminal in nature. Compare 705 ILCS 405/5–1 *et seq.* (West 1996) with 705 ILCS 405/5–101 *et seq.* (West 2000). For starters, the 1999 amendments provided a new purpose and policy section, which states in relevant part as follows:

> "(1) It is the intent of the General Assembly to promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system that will protect the community, impose accountability for violations of law and equip juvenile offenders with

competencies to live responsibly and productively. To effectuate this intent, the General Assembly declares the following to be important purposes of the this Article:

(a) To protect citizens from juvenile crime

(b) To hold each juvenile offender directly accountable for his or her acts.

(c) To provide an individualized assessment of each alleged and adjudicated delinquent juvenile, in order to rehabilitate and to prevent further delinquent behavior through the development of competency in the juvenile offender. As used in this Section, 'competency' means the development of educational, vocational, social, emotional and basic life skills which enable a minor to mature into a productive member of society.

(d) To provide due process, as required by the Constitution of the United States and the State of Illinois, through which each juvenile offender and all other interested parties are assured fair hearings at which legal rights are recognized and enforced.

(2) To accomplish these goals, juvenile justice policies developed pursuant to this Article shall be designed to:

***

(b) Provide secure confinement for minors who present a danger to the community and make those minors understand that sanctions for serious crimes, particularly violent felonies, should be commensurate with the seriousness of the offense and merit strong punishment;

(c) Protect the community from crimes committed by minors;

* * *

(j) Hold minors accountable for their unlawful behavior and not allow minors to think that their delinquent acts have no consequence for themselves and others." 705 ILCS 405/5–101 (West 2000).

Although proceedings under the Act are still not criminal in nature even in the aftermath of the 1999 amendments and are to be administered in a spirit of humane concern for the minor and to promote his general welfare, the policy statement in section 5–101 represents a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law. *In re A.G.*, 195 Ill. 2d 313, 317 (2001). Consistent with this end, the 1999 amendments changed some of the terminology of the Act. The Act now provides for a number of features common to a criminal trial. Pertinent to our analysis are the following provisions. The legislature has now indicated an intent that the term " 'trial' replace the term 'adjudicatory hearing' and be synonymous with that definition as it was used in the [Act]." 705 ILCS 405/5–101(17) (West 1998). Furthermore, the Act now allows for a "plea of guilty" in a delinquency proceeding (705 ILCS 405/5–605 (West 1998)), and if a trial is conducted, the court is required, at its conclusion, to "make and note in the minutes of the proceeding a finding of whether or not the minor is *guilty*." (Emphasis added.) 705 ILCS 405/5–620 (West 1998). If the court finds the minor "guilty," the cause then proceeds to a "sentencing hearing," where it is determined whether or not it is in the best interests of the minor or the public that he be made a ward of the court, with the possibility that if defendant is adjudicated a ward of the court, he could be committed to the Department of Corrections, Juvenile Division. 705 ILCS 405/5–620, 5–705, 5–710 (West 1998). In sum, the Act now provides for pleas of guilty, findings of guilty and sentencing–language which effectively tracks with the first clause of the term "conviction" as defined in the Code.

These amendments support the notion that a juvenile adjudication in 1998 was not considered a "sentence entered upon a plea of guilty" or a "verdict or finding of guilty of an offense." As previously mentioned, the above-discussed changes to the Juvenile Court Act did not become effective until January 1, 1999, several months after defendant's juvenile adjudication. Accordingly, they have no application here other than to illustrate that the legislature could have satisfied the

first part of the statutory definition of "conviction" under the Code if it had included the appropriate language to specify that an adjudication is a "finding of guilty." But this would not end our analysis because even with the 1999 amendments to the Juvenile Court Act, a juvenile adjudication still does not satisfy the second clause of the term "conviction" as defined by the Code.

The second clause of the definition requires that the finding of guilt be rendered by a "legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." 720 ILCS 5/2–5 (West 1998). The Juvenile Court Act plainly states that minors do not have a right to a jury trial unless it is specifically provided for in article V of the Act. 705 ILCS 405/5–101(3) (West 1998). A juvenile proceeding based on an allegation of robbery, like the one at issue in the present case, is not one allowing for a right to a trial by jury under the Act, and there is no indication that defendant was afforded the right to a jury trial on his delinquency adjudication. Instead, the Act requires the circuit court to conduct a bench trial on such juvenile adjudications. See 705 ILCS 405/5–605(1) (West 1998). This is all that is constitutionally required in juvenile delinquency proceedings. *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 29 L. Ed. 2d 647, 661, 91 S. Ct. 1976, 1986 (1971). This is because a juvenile proceeding is not "a 'criminal prosecution,' within the meaning and reach of the Sixth Amendment." *McKeiver*, 403 U.S. at 541, 29 L. Ed. 2d at 658, 91 S. Ct. at 1984. Nevertheless, juvenile adjudications cannot be deemed criminal felony "convictions" under the Code because the Code's definition of "conviction" requires that the finding of guilt be made by a court *authorized to try the case without a jury*, and the law does not authorize a felony conviction in the absence of a right to a trial by jury. Both our federal and state constitutions preclude a criminal felony conviction without the right to a jury trial. Specifically, the sixth amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const., amend. VI. Similarly, our state constitution provides that "[i]n criminal prosecutions, the accused shall have the right *** to

have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." Ill. Const. 1970, art. I, §8. Moreover, Illinois courts have long recognized that the right of an accused to a trial by jury in a criminal felony case is absolute unless specifically waived and the defendant has been properly and adequately informed of his rights. *People v. Fisher*, 340 Ill. 216, 257-65 (1930); *People v. Cowart*, 51 Ill. App. 2d 388, 390 (1964).

In *Duncan v. Louisiana*, 391 U.S. 145, 149, 20 L. Ed. 2d 491, 496, 88 S. Ct. 1444, 1447 (1968), the Supreme Court called the right to trial by jury in criminal cases "fundamental to the American scheme of justice" and held that the right applied to state prosecutions under the due process clause whenever the right would attach under federal law in a criminal case. A right to trial by jury is afforded criminal defendants to prevent oppression by the government. *Duncan*, 391 U.S. at 155-56, 20 L. Ed. 2d at 499, 88 S. Ct at 1451. As the Court in *Duncan* noted,

> "The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. " *Duncan*, 391 U.S. at 156, 20 L. Ed. 2d at 500, 88 S. Ct. at 1451.

We believe that when the Code uses the phrase "authorized to try the case without a jury" (720 ILCS 5/2–5 (West 1998)), it is referring to a situation where the defendant expressly waived his right to a jury trial if the case is one involving a felony offense. Thus, we conclude that for a defendant to be deemed a "person convicted of a felony" within the meaning of the escape statute (720 ILCS 5/31–6(a) (West 1998)), he must have been afforded the right to a trial by jury on the predicate felony. The law does not "authorize" anything less. Under the current legislative language employed in

defining the term "conviction" in the Code and in the absence of any clear language in the Juvenile Court Act, we simply cannot find that a juvenile adjudication is tantamount to a felony conviction for purposes of the escape statute.

Even if we were to consider the escape statute to be ambiguous, as the State urges, we still would not find that the legislative intent, as expressed in various provisions of the Juvenile Court Act, requires a different result. The policy that seeks to hold juveniles accountable for their actions and to protect the public does not negate the concept that rehabilitation remains a more important consideration in the juvenile justice system than in the criminal justice system and that there are still significant differences between the two, indicating that "the ideal of separate treatment of children is still worth pursuing." *McKeiver*, 403 U.S. at 546 n.6, 29 L. Ed. 2d at 661 n.6, 91 S. Ct. at 1986 n.6.

More importantly, if we were to accept the State's position, it would mean that juveniles would have the "worst of both worlds," one in which, unlike their adult counterparts, they are denied a right to a jury trial, yet their adjudications are deemed prior criminal convictions for the purpose of criminal statutes that require a prior conviction as an element of an offense, all the while without the statute specifically identifying an adjudication as a prior conviction. See *United States v. Kent*, 383 U.S. 541, 556, 16 L. Ed. 2d 84, 94, 86 S. Ct. 1045, 1054 (1966) ("there may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children"). When the United States Supreme Court held in *McKeiver* that a jury trial is not guaranteed by the federal Constitution in juvenile adjudications, it rested its holding mainly on the notion that juvenile proceedings are fundamentally different from criminal proceedings. *McKeiver*, 403 U.S. at 541-51, 29 L. Ed. 2d at 658-64, 91 S. Ct. at 1984-89. The plurality of the Court noted that juvenile proceedings are undergirded by the ideal of rehabilitation rather than punishment. The plurality feared the possibility that if a jury trial were mandated in juvenile proceedings, it would "put an effective end to what has been

the idealistic prospect of an intimate, informal protective proceeding." *McKeiver*, 403 U.S. at 545, 29 L. Ed. 2d at 661, 91 S. Ct. at 1986. According to the plurality, a jury trial would not greatly strengthen the fact-finding function and would, contrarily, "provide an attrition of the juvenile court's assumed ability to function in a unique manner." *McKeiver*, 403 U.S. at 547, 20 L. Ed. 2d at 662, 91 S. Ct. at 1987. The *McKeiver* plurality concluded by stating the following:

> "Finally, the arguments advanced by the juveniles here are, of course, the identical arguments that underlie the demand for the jury trial for criminal proceedings. The arguments necessarily equate the juvenile proceeding–or at least the adjudicative phase of it–with the criminal trial. Whether they should be so equated is our issue. Concern about the inapplicability of exclusionary and other rules of evidence, about the juvenile court judge's possible awareness of the juvenile's prior record and of the contents of the social file; about repeated appearances of the same familiar witnesses in the persons of juvenile and probation officers and social workers–all to the effect that this will create the likelihood of pre-judgment–chooses to ignore, it seems to us, every aspect of fairness, of concern, of sympathy, and of paternal attention that the juvenile court system contemplates.
>
> If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it." *McKeiver*, 403 U.S. at 550-51, 20 L. Ed. 2d at 664, 91 S. Ct. at 1989.

*McKeiver*'s reluctance to extend the right to a jury trial to juvenile proceedings and the absence of such a right in the Juvenile Court Act is ample reason to reject the notion that the 1999 amendments to the Act should be read to equate an adjudication with a criminal conviction in the present context. We are well aware that the 1999 amendments represent a shift from "the singular goal of rehabilitation to include the overriding

concerns of protecting the public and holding juvenile offenders accountable for violations of the law." *In re A.G.*, 195 Ill. 2d 313, 317 (2001). It is on this very basis–that the historical differences between juvenile an adult systems may no longer exist–that some commentators have criticized *McKeiver* and have urged that the right to a trial by jury be extended to juvenile proceedings. See J. Hochberg, *Should Juvenile Adjudications Count as Prior Convictions for Apprendi Purposes?*, 45 Wm. & Mary L. Rev. 1159, 1190-91 (2004); C. Murphy, *The Use of Prior Convictions After Apprendi*, 37 U.C. Davis L. Rev. 973, 1012-13 (2004). But without the actual extension of the right to a trial by jury, it would be incongruent to hold that juvenile adjudications constitute criminal felony convictions as a matter of course or, as the State urges here, that they constitute "convictions" for purposes of a statute that requires as an element of the offense that the defendant be a "person convicted of a felony."

The question before us is to be distinguished from the somewhat analogous issue of whether a juvenile adjudication is considered a "prior conviction" for sentencing enhancement purposes under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). In *Apprendi*, the Court stated that "[o]ther than the fact of a *prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. The federal circuits are divided over the question of whether nonjury juvenile adjudications can be characterized as "prior convictions" as that term is used in *Apprendi*. See *United States v. Burge*, 407 F.3d 1183 (11th Cir. 2005); *United States v. Jones*, 332 F.3d 688 (3d Cir. 2003); *United States v. Smalley*, 294 F.3d 1030 (8th Cir. 2002); *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001). In each of these cases, defendants were charged with violating the Armed Career Criminal Act (the federal Act) (18 U.S.C. §924(e) (2000)), which provides that a defendant convicted of being a felon in possession of a firearm is subject to a maximum sentence of 10 years. The federal Act further provides, however, that if the

convicted felon is found to have three previous convictions for a violent felony, a minimum sentence of 15 years is required. 18 U.S.C. §924(e) (2000). Furthermore, the federal Act expressly states that the term "conviction" is defined to include "a finding that a person has committed an act of juvenile delinquency involving a violent felony." 18 U.S.C. §924(e)(2)(C) (2000).

The Ninth Circuit has held that nonjury juvenile adjudications may not be considered as prior convictions for *Apprendi* purposes to enhance a sentence under the federal Act (*Tighe*, 266 F.3d at 1191-95), but the Third, Eighth and Eleventh Circuits have held that they may be so used (*Burge*, 407 F.3d at 1187-91; *Jones*, 332 F.3d at 694-96; *Smalley*, 294 F.3d at 1031-33).[3] In *Tighe*, the Ninth Circuit quoted the following language from *Apprendi*: " 'There is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.' " *Tighe*, 266 F.3d at 1194, quoting *Apprendi*, 530 U.S. at 496, 147 L. Ed. 2d at 458-59, 120 S. Ct. at 2366. *Tighe* interpreted this language to require that "the 'prior conviction' exception to *Apprendi*'s general rule must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial *and* proof beyond a reasonable doubt." (Emphasis added.) *Tighe*, 266 F.3d at 1194. Accordingly, *Tighe* held that the defendant's sentence could not stand because the fact that the prior nonjury adjudication had actually occurred was not something that was presented to the jury. *Tighe*, 266 F.3d at 1194-95.

The majority of courts have not followed *Tighe*. See *United States v. Burge*, 407 F.3d 1183, 1190 (11th Cir. 2005)

---

[3]As of yet, the United States Supreme Court has not resolved the conflict.

(collecting cases). Instead they have noted that *Apprendi* excluded prior convictions from its general rule because of the existence of procedural safeguards that buttress the convictions, namely, the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt. Representative of the approach of the majority of courts is the observation that *Apprendi* did not specifically address juvenile adjudications, which unfortunately " 'lie in between these two poles,' because they do not provide a jury trial but do require proof beyond a reasonable doubt." See *Ryle v. State*, 842 N.E.2d 320, 322 (Ind. 2005), quoting *Smalley,* 294 F.3d at 1032. The majority of courts have then concluded that the question of whether juvenile adjudications should be exempt from *Apprendi*'s general rule should turn on "whether juvenile adjudications, like adult convictions, are so reliable that due process of law is not offended by such an exemption." *Smalley*, 294 F.3d at 1032-33. The majority of courts then hold that given the panoply of procedural safeguards in place in a juvenile proceeding–including proof beyond a reasonable doubt–juvenile convictions can be considered constitutionally reliable enough to satisfy *Apprendi*'s exception without the right to a trial by jury. *Smalley*, 294 F.3d at 1032-33.

We take no position here with respect to the division among the federal circuits. We only discuss the jurisprudence on the use of nonjury juvenile adjudications for *Apprendi* purposes because we find it helpful to our analysis to illustrate the important differences between the case before us and the federal cases cited above. In each of the federal cases, a statute specifically defined a "conviction" as a prior juvenile adjudication for purposes of the offense at issue. Here, in contrast, the legislature has not defined the term "conviction" in the escape statute to include juvenile adjudications. Moreover, the key issue in the present case involves proof of a prior conviction as *an element of the offense* where the applicable statute fails to define an "adjudication" as a "conviction." Thus, the primary issue here turns on a question of statutory construction, while the principal issue in the federal cases turned on whether an adjudication could be classified as a prior conviction for *Apprendi* purposes, not on whether it could be

classified as a "conviction" for purposes of establishing an element of an offense. The distinction is critical, of course, because nothing in a penal statute may be construed against a defendant by intendment or implication (*Laubscher*, 183 Ill. 2d at 337).

In the absence of a statute expressly defining a juvenile adjudication as a conviction, Illinois courts have consistently held that juvenile adjudications do not constitute convictions. See *In re W.W.*, 97 Ill. 2d 53 (1983); *People v. Rankin*, 297 Ill. App. 3d 818 (1998). In *In re W.W.*, a juvenile was adjudicated delinquent. On appeal, the appellate court assessed a $50 fee against the minor pursuant to a statute that entitled the State's Attorney to the fee for each appeal prosecuted or defended by him upon "conviction" of "the defendant." Ill. Rev. Stat. 1979, ch. 53, par. 8; *In re W.W.*, 97 Ill. 2d at 54-55. This court vacated the order of the appellate court and held that a juvenile adjudication does not constitute a "conviction" for purposes of the statute. *In re W.W.*, 97 Ill. 2d at 57-58. Relying on previous Illinois precedent, this court reiterated the following: "[J]uvenile proceedings are not criminal in nature. As such, a minor is neither 'convicted' nor considered a 'defendant' or an 'accused.' Nor is a proceeding under the Juvenile Court Act denominated a 'conviction.' " *In re W.W.*, 97 Ill. 2d at 57. This court concluded its analysis in *In re W.W.* by emphasizing that it would not extend the statutory provision by intendment or implication. *In re W.W.*, 97 Ill. 2d at 58.

In *Rankin*, the defendant was convicted of unlawful possession of a weapon by a felon. A prior criminal conviction for aggravated battery was used to serve as the predicate felony for the charge . In support of its sentencing argument, the State maintained that the defendant's prior juvenile adjudication, based on an allegation of residential burglary, could constitute a "conviction" for purposes of extended-term sentencing. The appellate court rejected the State's argument. In doing so, the appellate court noted that section 5–5–3.2 of the Unified Code of Corrections authorized extended-term sentencing when a defendant is convicted of a felony, " 'after having been previously *convicted* in Illinois or any other jurisdiction of the same or similar class felony or greater class

felony.' " (Emphasis in original.) *Rankin*, 297 Ill. App. 3d at 824, quoting 730 ILCS 5/5–5–3.2(b)(1) (West 1994). The court examined the specific definition of "conviction" found in the Unified Code of Corrections (730 ILCS 5/5–1–5 (West 1994)), which is identical to the definition of "conviction" found in the statute at issue in our case. *Rankin* observed:

> "This definition does not include juvenile adjudications. Further, a term of well-known legal significance can be presumed to have that meaning in a statute. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 17, 678 N.E.2d 1009, 1017 (1996). 'Conviction' is commonly known to mean 'the result of a *criminal* trial which ends in a judgment or sentence that the accused is guilty as charged.' Black's Law Dictionary 333 (6th ed. 1990)." (Emphasis added.) *Rankin*, 297 Ill. App. 3d at 824.

*Rankin* contrasted the situation before it with the use of juvenile delinquency adjudications in sentencing generally. It noted that subsection (a)(3) of section 5–5–3.2 of the Code expressly provides that courts may consider as aggravating factors in sentencing " 'a history of *prior delinquency* or criminal activity.' " (Emphasis added.) 730 ILCS 5/5–5–3.2(a)(3) (West 1994). *Rankin* then concluded that the legislature could have included a juvenile delinquency adjudication in its definition of conviction under the Unified Code of Corrections or made specific reference to such adjudications in section 5–5–3.2(b), discussing when an extended-term sentence may be imposed. *Rankin*, 297 Ill. App. 3d at 825. Because it did not do so, the court concluded that defendant's juvenile delinquency adjudication did not provide a basis for imposing an extended-term sentence. *Rankin*, 297 Ill. App. 3d at 825.

We find *In re W.W.* and *Rankin* to be well reasoned and supportive of our position here. Similar to *Rankin*, we conclude that the legislature could have included juvenile adjudications within its general definition of "conviction" in the Code, or it could have mentioned juvenile adjudications in section 31–6 of the escape statute itself. It did not do so, and we are constrained to find that it had no intent to do so.

It is readily apparent that the legislature understands the need for specifically defining a juvenile adjudication as a

conviction when that is its intention. In *In re J.W.*, 204 Ill. 2d 50 (2003), one of the issues before this court was whether the defendant could be considered a "sexual predator" as defined by the Sex Offender Registration Act (Registration Act) (730 ILCS 150/1 *et seq.* (West 2000)). Defendant had been adjudicated delinquent based on two instances of aggravated criminal sexual assault. The legislature defined a "sexual predator" in section 2(E) of the Registration Act as "any person who *** is *** [c]onvicted of a violation of any of the following Sections of the Criminal Code of 1961 *** : *** 12–14 (aggravated criminal sexual assault)." 730 ILCS 150/2(E)(1) (West 2000). The legislature in turn provided in section 2(A–5) of the Registration Act that "convicted" was to have the same meaning as "adjudicated" for purposes of section 2. 730 ILCS 150/2 (A–5) (West 2000). *In re J.W.* found the legislative attempt to define "convicted" so as to include juvenile adjudications to be clear and unambiguous. *In re J.W.*, 204 Ill. 2d at 64. Accordingly, this court gave effect to the statute as written and found that the defendant qualified as a "sexual predator" under the statute. *In re J.W.*, 204 Ill. 2d at 64. In contrast to *In re J.W.*, the legislature in the present case has not chosen to include juvenile adjudications in the definition of "conviction" for purposes of the escape statute, and again we may not read such an inclusion into a penal statute by intendment or implication.

The State contends that the "excluded jurisdiction" provision contained in section 5–130(5)(a) of the Juvenile Court Act warrants a different result. We reject that contention. Section 5–130(5)(a) provides as follows:

> "The definition of delinquent minor under Section 5–120[4] of this Article shall not apply to any minor who is charged with a violation of subsection (a) of Section 31–6 or Section 32–10 of the Criminal Code of 1961 when the minor is subject to prosecution under the criminal laws of this State as a result of the application

---

[4]A footnote in West's Illinois Compiled Statutes 1998 states that this cite to section 5–120 "probably should read '5–105.' "

of the provisions of Section 5–125, or subsection (1) or (2) of this Section. These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5–130(5)(a) (West 1998).

The State mistakenly believes that this statute cannot be read in harmony with the escape statute as interpreted by the appellate court. Section 5–130(5)(a) does not purport to define the offense of escape in any way. Rather, it only ensures the prosecution of a minor as an adult under the criminal laws for escape where the minor escapes from custody when he is subject to prosecution under the criminal laws of this state *as a result of the transfer provisions listed in section 5–130(5)(a)*, namely, sections 5–125 and subsections (1) and (2) of section 5–130. These transfer provisions list situations in which a minor must be charged and tried as an adult. Section 5–130(5)(a) is thus consistent with the escape statute's alternative element that "[a] person *** *charged with the commission of a felony* who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony." (Emphasis added.) 720 ILCS 5/31–6(a) (West 1998). By way of example, we note that section 5–130(1)(a), which is one of the transfer provisions listed in section 5–130(5)(a), provides for mandatory transfer when any minor who is at least 15 years old at the time of the offense commits one of the following offenses: first degree murder, aggravated criminal sexual assault, armed robbery when the armed robbery was committed with a firearm, or aggravated vehicular hijacking when the hijacking was committed with a firearm. 705 ILCS 405/5–130(1)(a) (West 1998). We further note that section 5–130(5)(a) does not provide any impediment to a *juvenile* proceeding for the offense of escape when the escape allegation is based on a *prior felony* rather than a *pending charge subjecting the minor to prosecution* as a result of application of section 5–125, 5–130(1) or 5–130(2). In other words, when the escape allegation is based on a prior felony, the juvenile may be prosecuted in adult court pursuant to the discretionary transfer provision of the Act (see 705 ILCS 405/5–805(3) (West 1998)), or he may be prosecuted in

˘20˘

juvenile court. But if the escape offense is based on an allegation that defendant escaped while awaiting prosecution under the criminal laws as a result of the application of the mandatory-transfer provisions listed in section 5–130(5)(a)–as would be the case where a defendant had committed the offense of first degree murder and was in custody awaiting prosecution–the defendant may only be prosecuted for the offense of escape in adult court under criminal law. We find nothing in section 5–130(5)(a) that evinces a legislative intent to prosecute a minor for the offense of escape where the minor was in custody based on a juvenile adjudication at the time of the escape.

The legislative distinction apparently drawn between minors with juvenile delinquency adjudications and minors who have been convicted of felonies or who are currently subject to prosecution for felonies under the criminal law does not mean that a juvenile who has been adjudicated delinquent may leave a detention center at his own whim without consequences. Because the circuit court in juvenile proceedings maintains jurisdiction until the minor turns 21 years of age, the court would be free to exercise its discretion in modifying a minor's term of commitment, when possible, for any infraction involving a minor leaving a detention facility without authorization. See 705 ILCS 405/5–710(3), 5–750, 5–755 (West 1998). Moreover, such infractions could also be handled by a station adjustment, which allows for the informal or formal handling of a minor's misbehavior by a juvenile police officer. 705 ILCS 405/5–301 (West 1998).

Finally, we note that the cases relied upon by the State are easily distinguishable. See *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457 (2004); *People v. Woods*, 193 Ill. 2d 483 (2000); *Fitzsimmons v. Norgle*, 104 Ill. 2d 369 (1984); *People v. Smith*, 345 Ill. App. 3d 179 (2004); *People v. Baaree*, 315 Ill. App. 3d 1049 (2000). None of the State's cases hold that a juvenile adjudication is tantamount to a "conviction" in any context, nor do any of the cases even consider the question. Moreover, the general principles articulated in the State's cases are supportive of our analysis here. For example, in *Baaree*, the issue turned on defendant's age at the time he was "convicted"

of possession of a controlled substance with the intent to deliver. Under the sentencing statute at issue, if defendant was at least 21 years old at the time of "conviction," he was eligible for an extended-term sentence. 730 ILCS 5/5–5–3(c)(8) (West 1998); *Baaree*, 315 Ill. App. 3d at 1050. The defendant turned 21 between the date he was found guilty and the date he was sentenced. With respect to the question of whether the date of the finding of guilt or the date of sentence constituted the conviction, the appellate court found that the statute did not favor one approach over the other. *Baaree*, 315 Ill. App. 3d at 1052. Because penal statutes are to be strictly construed in favor of the accused, *Baaree* held that the construction favoring the accused had to be adopted. *Baaree*, 315 Ill. App. 3d at 1052-53.

In the present case, we hold that under the plain meaning of the escape statute, a juvenile who is adjudicated delinquent is not a "person convicted of a felony." However, even if we were to consider the term "conviction" to be ambiguous, we still would not find a juvenile adjudication to be a conviction for purposes of the escape statute. Like *Baaree*, we would conclude that the State's interpretation is not favored over defendant's, and therefore the statute must be strictly construed in favor of the accused.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed.*