SIXTH DIVISION
November 17, 2006

No. 1-06-1356

| | | |
|---|---|---|
| In re TERRELL L., a minor | ) | Appeal from the |
| | ) | Circuit Court |
| (Terrell L., | ) | of Cook County. |
| | ) | |
| Appellant | ) | |
| | ) | |
| v. | ) | No. 98 JA 1386 |
| | ) | |
| The Department of Children and | ) | Honorable |
| Family Services, | ) | Candace Fabri, |
| | ) | Judge Presiding. |
| Appellee). | ) | |

JUSTICE O'MALLEY delivered the opinion of the court:

Respondent Terrell L., a minor, and his guardian sought to vacate his guardianship with his paternal grandmother and have the Guardianship Administrator (the Administrator) of the Department of Children and Family Services (DCFS) appointed as his guardian.  The circuit court denied the motions based on a finding that the guardian was not unfit, unable or unwilling, for reason other than financial circumstances alone.  Respondent appeals the judgment of the circuit court contending that it improperly interpreted section 2-27 of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2-27 (West 2004)) and should have conducted a best interest analysis to guide its decision.  For the reasons that follow, we reverse the judgment of the circuit court and remand this matter for further proceedings.

BACKGROUND

Terrell and his twin sister Theresa were born on May 16, 1988, to Monica L. and Anthony S. Terrell and Theresa were two of Monica L.'s six children. In April 1998, the State filed a petition for adjudication of wardship alleging that Terrell and his siblings were abused and neglected by their biological parents. The circuit court granted temporary custody of Terrell and Theresa to the DCFS Administrator. On May 10, 1999, the circuit court issued an adjudication order pursuant to section 2-21 of the Act finding that the minors were abused and neglected in accordance with sections 2-3(1)(a) and (1)(b) of the Act and placed them under the jurisdiction of the juvenile court. On August 20, 1999, the circuit court entered a disposition order pursuant to section 2-27 of the Act, adjudicating Terrell and his siblings wards of the court based on findings that Monica and Anthony were both unable and unfit to care for their children for reasons other than financial circumstances alone. The specific findings were predicated on various indications of abuse and neglect. The court held that it was in the best interests of the children to remove them from their parents' custody. The circuit court appointed the DCFS Administrator to be the guardian for Terrell and his siblings.

On September 13, 2000, the DCFS Administrator filed motions

to vacate guardianship of Terrell and Theresa, transfer guardianship to James S. and Theresa S., the minors' paternal grandparents, and close the case. The minors had resided with James and Theresa S. since the age of five. On October 4, 2000, the circuit court entered an order vacating the Administrator's guardianship and establishing private guardianship with James and Theresa S. The circuit court explicitly retained jurisdiction over the parties and the case to modify or enforce the order.

During their adolescent years, both Terrell and Theresa encountered problems with school. Theresa, however, became increasingly difficult to discipline and would run away from home for weeks at a time, use illegal drugs and was found delinquent for aggravated assault. Terrell, on the other hand, after failing in high school, joined the Lincoln's Challenge program and received his GED. Terrell subsequently enrolled in a diesel mechanics repair program at Kishwaukee Community College in DeKalb, Illinois, through Lincoln's Challenge and resided in a private residence hall near the campus of Northern Illinois University.

Prior to January 6, 2006, James S. passed away. Theresa S., at the age of 75, also suffered from illnesses such as high blood pressure, heart disease and gout. Theresa S. began to express concerns about her ability to care for the minors. On January 6,

2006, Theresa S. filed a pro se petition to vacate her guardianship of Terrell and Theresa. The circuit court partially granted the motion, making both Theresa and Terrell wards of the court. The court appointed a private attorney to represent Theresa S. and the office of the public guardian as attorney and guardian ad litem (GAL) to represent the minors. On April 17, 2006, following several appearances by the attorneys representing Theresa S., the minors and the State, Terrell's GAL filed a motion to vacate Terrell's guardianship and appoint the DCFS Administrator as guardian.[1] The attorney for Theresa S. and the State's attorney were in agreement with the GAL's motion.

On April 18, 2006, the circuit court conducted a hearing to determine placement of the minors who had been made wards of the court pursuant to section 2-33 of the Act. Over the DCFS's objection, the court granted Theresa S.'s petition to vacate her guardianship of Theresa L. and appointed the DCFS Administrator as Theresa L.'s guardian. The court continued the hearing as it related to the placement of Terrell. On May 5, 2006, at his

---

[1]The record reflects that Theresa S.'s counsel initially believed that Theresa S. only sought to vacate guardianship of Theresa L. After clarifying his client's position, however, counsel confirmed that she was seeking to vacate guardianship of both minors and subsequently joined the GAL's motion.

4

continued hearing, Terrell's GAL, the State's attorney and Theresa S. argued that it was in Terrell's best interest to appoint the DCFS Administrator as his guardian for, among other reasons, continued educational support. The Department of Children and Family Services responded that the consideration of Terrell's best interest was not the proper "standard of review" under section 2-27 of the Act without first entering a finding that Theresa S. was unfit, unable or unwilling to care for Terrell. The Department of Children and Family Services also argued that Theresa S., Terrell and the State were seeking appointment of the DCFS Administrator solely for financial reasons. The circuit court took the case under advisement over the weekend to further examine section 2-27 and other relevant provisions of the Act. It expressed its uncertainty regarding the parties' and the court's interpretation of section 2-27 of the Act.

On May 12, 2006, the circuit court denied Theresa S. and Terrell's motion to appoint the DCFS Administrator as guardian. The court indicated that it interpreted section 2-27 of the Act to preclude the court from vacating private guardianship unless it first found Theresa S. to be unfit, unable or unwilling for reasons other than financial ability alone. The circuit court expressed its doubts about the outcome of the instant case in its

5

1-06-1356

ruling, specifically with regard to its interpretation of section 2-27.

The circuit court denied Terrell's emergency motion to reconsider on May 15, 2006, but granted his motion to stay the circuit court's ruling pending the outcome of this appeal over the DCFS's objection. Terrell filed this timely appeal.

ANALYSIS

I. STANDARD OF REVIEW

Terrell contends that the circuit court erred in denying his motion to vacate private guardianship and appoint the DCFS Administrator as guardian based on two theories. The first theory is that the circuit court misinterpreted section 2-27 of the Act to require a finding that Theresa S. was unfit, unable or unwilling, for reasons other than financial ability, before considering Terrell's best interests. Second, if we were to agree with the circuit court that such a finding was necessary prior to analyzing Terrell's best interest, then the circuit court's conclusion that Theresa S. was not unable to care for Terrell was against the manifest weight of the evidence. Because we agree that the circuit court misinterpreted section 2-27 of the Act, we need only address Terrell's first argument. We review issues of statutory interpretation de novo. In re Justin M.B., 204 Ill. 2d 120, 124 (2003).

6

## II. PROCEDURAL HISTORY

Due to the relative complexity of the procedural history of this case, we find it necessary to recount the actions and identify the authority under which the circuit court issued its rulings on the relevant motions. First, in response to Theresa S.'s motion, the circuit court had to determine whether to open Terrell and Theresa's case and reinstate wardship pursuant to section 2-33 of the Act. Section 2-33 states:

"(1) Any time prior to a minor's 18th birthday, pursuant to a supplemental petition filed under this Section, the court may reinstate wardship and open a previously closed case when:

(a) wardship and guardianship under the Juvenile Court Act of 1987 was vacated in conjunction with the appointment of a private guardian under the Probate Act of 1975;

(b) the minor is not presently a ward of the court under Article II of this Act nor is there a petition for adjudication of wardship pending on behalf of the minor; and

(c) it is in the minor's best interest that wardship be reinstated.

(2) The supplemental petition must be filed in the same

7

1-06-1356

proceeding in which the original adjudication order was
entered."  705 ILCS 405/2-33 (West 2004).

The circuit court found that the minors met the standards set
forth in section 2-33 and ruled that both Terrell and Theresa
were to be made wards of the court.  The court then looked to
section 2-23 of the Act, which provides, in pertinent part:

"(1) The following kinds of orders of disposition may be
made in respect of wards of the court:

(a) A minor under 18 years of age found to be neglected
or abused under Section 2-3 or dependent under Section
2-4 may be (1) continued in the custody of his or her
parents, guardian or legal custodian; (2) placed in
accordance with Section 2-27; (3) restored to the
custody of the parent, parents, guardian, or legal
custodian, provided the court shall order the parent,
parents, guardian, or legal custodian to cooperate with
the Department of Children and Family Services and
comply with the terms of an after-care plan or risk the
loss of custody of the child and the possible
termination of their parental rights; or (4) ordered
partially or completely emancipated in accordance with
the provisions of the Emancipation of Mature Minors
Act."  705 ILCS 405/2-23 (West 2004).

8

1-06-1356

Based on section 2-23(1)(a)(2) of the Act, the circuit court looked to section 2-27 of the Act for direction in terms of Terrell's placement.  Section 2-27 states:

"(1) If the court determines and puts in writing the factual basis supporting the determination of whether the parents, guardian, or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, guardian or custodian, the court may at this hearing and at any later point:

(a) place the minor in the custody of a suitable relative or other person as legal custodian or guardian;

(a-5) with the approval of the Department of Children and Family Services, place the minor in the subsidized guardianship of a suitable relative or other person as legal guardian; 'subsidized guardianship' means a private guardianship arrangement for children for whom the permanency goals of return home and adoption have been ruled out and who meet the qualifications for

9

subsidized guardianship as defined by the Department of Children and Family Services in administrative rules;

(b) place the minor under the guardianship of a probation officer;

(c) commit the minor to an agency for care or placement, except an institution under the authority of the Department of Corrections or of the Department of Children and Family Services;

(d) commit the minor to the Department of Children and Family Services for care and service ***."  705 ILCS 405/2-27 (West 2004).

III. CONSTRUCTION OF THE JUVENILE COURT ACT OF 1987

The Department of Children and Family Services argues that the circuit court may not modify guardianship under section 2-27 of the Act without first finding the guardian unfit, unable or unwilling.  We disagree.  In all guardianship and custody cases, " 'the issue that singly must be decided is the best interest of the child.' "  In re Austin W., 214 Ill. 2d 31, 49 (2005), quoting In re Ashley K., 212 Ill. App. 3d 849, 879 (1991).  "A child's best interest is not part of an equation.  It is not to be balanced against any other interest.  In custody cases, a child's best interest is and must remain inviolate and impregnable from all other factors ***."  In re Ashley K., 212

Ill. App. 3d at 879. In our view, once the initial finding of abuse and neglect has been entered by the circuit court, it is proper and consistent with the purpose of the Act that the circuit court have broad authority to modify orders in a manner that serves the best interests of the minor. In re J.J., 327 Ill. App. 3d 70, 77 (2001) (finding that "where child custody proceedings are brought under the Act, the juvenile court's primary concern is the best interests of the child, and to that end, the court is vested with wide discretion").

"The Juvenile Court Act is a statutory scheme, created by the legislature, the purpose of which is to secure for each minor subject thereto the care and guidance which will best serve the minor's safety and moral, emotional, mental and physical welfare, and the best interests of the community." In re Austin W., 214 Ill. 2d 31, 43-44 (2005); 705 ILCS 405/1-2 (West 2004). Our supreme court has clearly indicated that once a child has been adjudicated abused, neglected or dependent pursuant to section 2-21 of the Act, the court must determine whether it is in the best interests of the child to be made a ward of the court and the "proper disposition best serving the health, safety and interests of the minor and the public." In re Austin W., 214 Ill. 2d at 43; 705 ILCS 405/2-22(1) (West 2004).

Although dispositional orders are generally considered

11

1-06-1356

"final" for the purposes of appeal (see In re Austin W., 214 Ill. 2d at 43-44), they are subject to modification in a manner consistent with the provisions of the Act. See 705 ILCS 405/2-23 (West 2004). The purpose of the dispositional hearing is for the court to determine whether it was in the best interests of the children to be made wards of the court. In re J.J., 327 Ill. App. 3d 70, 77 (2001) (finding that a child's best interests are superior to all other factors even if the parent is not found to be unfit). When conducting a dispositional hearing, the question is not necessarily one of unfitness of the parent but rather what is in the best interest of the child. In re Edward T., 343 Ill. App. 3d 778, 800 (2003); In re Chyna B., 331 Ill. App. 3d 591, 597 (2002). Relative to the circuit court's responsibility in a dispositional hearing, we find In re J.J., to be instructive. In that case we stated:

"Pursuant to the Juvenile Court Act of 1987 (Act), in order to deprive a parent of custodial rights to children who have been adjudged wards of the court, a court must find that the parent is unfit or unable to care for, protect, train or discipline the children or is unwilling to do so. [Citation.] Where child custody proceedings are brought under the Act, the juvenile court's primary concern is the best interests of the child, and to that end, the court is

12

vested with wide discretion. [Citations.] In such custody proceedings, a child's best interest is superior to all other factors, including the interests of the biological parents. [Citation.] 'If the "best interests" standard can be attained only by placing the child in the custody of someone other than the natural parent, it is unnecessary for the court to find the natural parent unfit to care for the child.' [Citations.]" In re J.J., 327 Ill. App. 3d at 77.

The DCFS contends, nonetheless, that a minor's best interests are not to be considered in a section 2-27 fitness determination and that the legislature intended that a finding of unfitness be determined before any guardianship modification occurs. In support of its first contention, the DCFS cites to In re M.B., 332 Ill. App. 3d 996, 1004 (2002). In re M.B. is distinguishable from the instant case. In that case we held that "[i]n gauging one's fitness to act as a parent, the child's best interests are not to be considered." In re M.B., 332 Ill. App. 3d at 1004. However, the court was not modifying a previous guardianship order and the question before the court in that case was whether sufficient evidence existed to support the circuit court's finding that the biological parent was unfit. In re M.B., 332 Ill. App. 3d at 1004. In this case, the court is being asked to modify a previous guardianship order and the facts do

13

not implicate the rights of biological parents.  We therefore agree with Terrell that the court was not required to find his guardian unfit to care for him before modifying a previously entered guardianship order.

IV. INTERPRETATION OF SECTION 2-27

Terrell next argues that the circuit court misinterpreted and misapplied section 2-27 of the Act to the instant case.  The cardinal principle of statutory interpretation is that the court must effectuate legislative intent.  In re Justin M.B., 204 Ill. 2d at 123, citing Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc., 158 Ill. 2d 76, 81 (1994). The best indicator of legislative intent is statutory language. Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 504 (2000).  Courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it.  People v. Taylor, 221 Ill. 2d 157, 162 (2006), citing People v. Davis, 199 Ill. 2d 130, 135 (2002).  However, a reviewing court's inquiry must always begin with the language of the statute itself, which is the surest and most reliable indicator of the legislature's intent.  Taylor, 221 Ill. 2d at 162; People v. Pullen, 192 Ill. 2d 36, 42 (2000). When the language of a statute is clear, it must be applied as written without resort to further aids or tools of

interpretation. In re R.L.S., 218 Ill. 2d 428, 433 (2006). If statutory language is plain, the court cannot read exceptions, limitations or conditions into a statute that the legislature did not express. In re D.D., 196 Ill. 2d 405, 419 (2001); Garza v. Navistar International Transportation Corp., 172 Ill. 2d 373, 378 (1996), quoting Solich, 158 Ill. 2d at 83. Only when the meaning of the enactment cannot be ascertained from the language may a court look beyond the language and resort to aids for construction. In re D.D., 196 Ill. 2d at 419; Gem Electronics of Monmouth, Inc. v. Department of Revenue, 183 Ill. 2d 470, 475 (1998); Solich, 158 Ill. 2d at 81.

In the instant case, the Department cites to the language of section 2-27 which refers to a guardian and legal custodian in addition to parents. This inclusion of a guardian and legal custodian, according to the DCFS, is proof that "the General Assembly intended that a bifurcated hearing take place under section 2-27 [of the Act], with the court first considering fitness of the minor's current guardian before turning to the child's interest." In other words, "if the legislature had intended that the fitness inquiry in section 2-27 apply only to the initial decision to remove a minor from his natural parents, there would be no fitness inquiry for the subsequent guardians and/or legal custodians."

15

1-06-1356

Terrell asserts that the language of the statute allowing the circuit court to make a placement during the section 2-27 "hearing and at any later point" clearly and unambiguously gives the circuit court authority to place a minor once there is a determination that the parents, guardian or legal custodian was unfit, unable or unwilling to properly care for the minor. We agree.

Terrell points out that the circuit court entered specific findings on August 20, 1999, that his biological parents were unfit, unable and unwilling to care for him and his siblings and found that it was in their best interests to remove them from their parents' custody and appoint the DCFS Administrator as guardian. Following the circuit court's appointment of the DCFS Administrator as guardian to Terrell and his siblings, it subsequently appointed James and Theresa S. private guardians on the DCFS Administrator's motion. This placement of the minors with James and Theresa S. was accomplished pursuant to section 2-27 of the Act without a finding that the DCFS or the Administrator was unfit, unable or unwilling to care for the minors.

We are aware that the language of section 2-27 of the Act calls for a written factual finding supporting the circuit court's determination and refers to guardians and legal

16

custodians. It does not, however, indicate whether a finding of unfitness is required once parental rights are terminated and a modification of guardianship is sought. Based on the plain language of section 2-27 of the Act, we find two compelling reasons to conclude that a subsequent finding that a guardian or legal custodian is unfit, unable or unwilling is not required before the circuit court may modify placement of a minor.

First, the language, "at this hearing and at any later point," is quite broad in its scope and does not contain any limiting language. In our view, if the legislature intended that the circuit court must find a guardian unfit, unable or unwilling before a modification under section 2-27 of the Act, it could have so indicated in the text of this section. It did not. The legislature expressly gave the circuit court authority to exercise the options contained in section 2-27 of the Act at the hearing and at any later point. The DCFS's interpretation of section 2-27 of the Act would require that it find any guardian or legal custodian, including the DCFS, unfit, unable or unwilling before modifying placement of a minor previously adjudicated abused and neglected. We find such an interpretation to be inconsistent with the purpose of the Act and well-established Illinois case law and, potentially, contrary to the best interests of the minor. 705 ILCS 405/1-2 et seq. (West

17

1-06-1356

2004); see also <u>In re Austin W.</u>, 214 Ill. 2d at 46; <u>In re Ashley K.</u>, 212 Ill. App. 3d at 879; <u>In re Violetta B.</u>, 210 Ill. App. 3d 521, 533 (1991).

Second, were we to agree with the DCFS's construction of section 2-27, the phrase "at any later point" would be rendered meaningless.  A statute should be construed in a manner such that no term is rendered meaningless or superfluous.  <u>Harshman v. DePhillips</u>, 218 Ill. 2d 482, 494 (2006), citing <u>Stroger v. Regional Transportation Authority</u>, 201 Ill. 2d 508, 524 (2002). We cannot conclude, based on the language of the statute, that the legislature did not intend the words "at any later point" to actually mean "at any later point."  It is neither this court's place nor its function to limit or expand the operative phrase in this statute.  <u>In re R.L.S.</u>, 218 Ill. 2d at 433.  Moreover, if it so desired, the legislature could have simply identified an event or a point in time beyond which the circuit court would be required to hold an additional hearing and make such a finding of a guardian or legal custodian before ordering a modification.  It did not.  We therefore conclude that the legislature's intent, as evidenced by the plain language, was to authorize the circuit court to place a minor at any time following an initial finding of unfit, unable or unwilling under section 2-27 of the Act when it serves the minor's best interests.

V. BEST INTEREST ANALYSIS

We recognize that the DCFS also contends that the circuit court considered the best interests of Terrell and ruled that guardianship with the Administrator was not in his best interests. After reviewing the record, it is not clear whether the circuit court believed that placement pursuant to section 2-27 was prohibited without a renewed finding that Theresa S. was unfit, unable or unwilling. The circuit court made the following statements during arguments on the motions and in its ruling:

"But when you look at the actual issue, is it in his best interest for [the court] to take wardship? Yes, the best interest factors apply. Am I able to find that [Theresa S.] is unable so that I can look at the best interest? I don't think so."

Relative to modifying a previous guardianship order under section 2-27, the court stated:

"[W]hat do I make of this language? The Court may at this hearing and at any later point. You're arguing to me on behalf of the minor that that means that once I've done it once, at any later point I can do whatever of these options, A through D I feel is appropriate without any further finding other than just best interest. I appreciate that argument. It could be right which is why I am going to

19

stay the enforcement of this order."

Lastly, before ruling in favor of the DCFS the court explained:

"[T]he questions is in order for me to do a 2-27 dispositional order, do I have to find some deficit in order for me to intervene and to name the State then as this youngster's guardian? I think I essentially do. *** I have struggled with this. I think that the statute wants me to do that. And then the questions is factually I've made findings that she is neither unable nor unwilling nor unfit. And to the extent that she is under any inability, it is strictly financial. * * *

[I] do find that some deficiency on the part of the legal guardian has to be identified before I start down the road [that] somebody else can do it better. I find that specifically because I feel that 2-23 drives me to 2-27 and 2-27 requires that. Now, if I'm wrong and it is strictly a best interest issue, then, again, I want to reiterate what I said the first time through. I think this all about finances."

Despite the DCFS's contention that the circuit court decided this matter based on Terrell's best interests, we find it appropriate to remand this case to the circuit court for further proceedings. "In all cases, it is the health, safety and

interests of the minor which remains the guiding principle when issuing an order of disposition regarding the custody and guardianship of a minor ward." In re Austin W., 214 Ill. 2d at 46; see also In re Ashley K., 212 Ill. App. 3d at 879, quoting In re Violetta B., 210 Ill. App. 3d at 533. Based on the record of the proceedings below, it is clear that the framework for the proceedings here was predicated on an erroneous construction of the applicable statute and primarily focused on Theresa S.'s fitness. We find it more appropriate for the circuit court to decide what action, if any, should be taken regarding Terrell's motion with the benefit of a full hearing that is not dominated by uncertainty in applying the statute. We, however, express no opinion with regard to the outcome on remand and defer to the circuit court to determine whether Terrell requires any further action provided under the Act.

As an aside, we are not suggesting that, in the absence of a previous order entered pursuant to section 2-27 of the Act, a finding of unfit, unable or unwilling is not required. That is a different issue which is not before this court for consideration. We are also mindful that biological parents have a superior right of custody to their children and that both parents must be adjudged unfit, unable or unwilling to care for the minor before placement with the DCFS is authorized. In re Edward T., 343 Ill.

21

App. 3d 778 (2003). A fit parent has a superior right to custody of his child that can be superceded only by a showing of good cause to place custody of the child in a third party. In re S.S., 313 Ill. App. 3d 121, 132 (2000). Nonetheless, the rights of Terrell's biological parents were previously terminated and are not now at issue. Consequently, we hold that the circuit court was not required to find Theresa S. unfit, unable or unwilling prior to considering Terrell's best interests relative to his motion.

## V. CONCLUSION

It appears to be obvious that once a minor has been adjudicated abused, neglected or dependent under the Act and thrust into the care of this state's juvenile system, the circuit court's main and perhaps only function is to address the minor's needs consistent with his best interests. We need not recount the unspeakable circumstances established in the record under which Terrell and his siblings initially came to be wards of the court. Suffice it to say that the only contact with the semblance of a caring adult that similarly situated children will ever experience may only occur through the efforts of the circuit court and agency intervention. We suggest that adhering to a rigid construction of the Act which limits the court's ability to exercise its discretion and act in the best interests of a child

22

frustrates the purpose of the Act and pointlessly elevates form over substance.

For the foregoing reasons, we hold that the circuit court misinterpreted and misapplied section 2-27 of the Act as it relates to a modification of a previous guardianship order. Accordingly, we reverse and remand this matter to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

JOSEPH GORDON and McNULTY, JJ., concur.