# Illinois Official Reports

## Supreme Court

---

### *People v. Jones*, 2016 IL 119391

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DERRICK JONES, Appellant. |
| Docket No. | 119391 |
| Filed | October 20, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Daniel Rozak, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Josette M. Skelnik, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellant. |
| | Lisa Madigan, Attorney General, of Springfield, and James Glasgow, State's Attorney, of Joliet (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and John R. Schleppenbach, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Justices Thomas, Karmeier, and Theis concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Chief Justice Garman and Justice Kilbride.

**OPINION**

¶ 1      Defendant Derrick Jones was convicted of aggravated robbery in the circuit court of Will County and sentenced to an extended-term sentence of 24 years' imprisonment based on a prior juvenile adjudication of delinquency referenced in his presentence investigative report. Defendant appealed his sentence, contending that the use of his prior juvenile adjudication to enhance his sentence violated the rulings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Shepard v. United States*, 544 U.S. 13 (2005). The appellate court affirmed. 2015 IL App (3d) 130053. We allowed defendant's petition for leave to appeal pursuant to Illinois Supreme Court Rules 315 and 612 (Ill. S. Ct. R. 315 (eff. July 1, 2013); R. 612 (eff. Feb. 6, 2013)). For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                  I. BACKGROUND

¶ 3      Defendant was charged by indictment with aggravated robbery, a Class 1 felony (720 ILCS 5/18-5 (West 2010) (repealed by Pub. Act 97-1108 (eff. Jan. 1, 2013))), as a result of an incident that occurred on January 6, 2012. Before defendant's jury trial began, the court asked the parties whether the sentencing range for the aggravated battery charge would be 4 to 30 years. The State agreed, as did defendant's counsel. Defendant's counsel stated that the State had tendered to her a "certified court docket from the '04 JD case" indicating that defendant, as a juvenile, had been adjudicated delinquent on multiple counts of residential burglary and that adjudication would make defendant eligible for an extended-term sentence in the present case, with a range of 4 to 30 years.[1] However, defendant's counsel also indicated that she spoke with defendant and defendant denied having an adjudication for residential burglary. The court admonished defendant that he faced a sentencing range of 4 to 30 years, and the case proceeded to trial.

¶ 4      At trial, the evidence presented was limited to the aggravated robbery charge. No evidence regarding defendant's prior juvenile adjudication was introduced. The jury found defendant guilty of aggravated robbery, and the case proceeded to sentencing.

¶ 5      A presentencing investigative report (PSI) indicated that defendant, as a juvenile, had been adjudicated delinquent in 2005 of multiple offenses in case No. 04 JD 00276, including three counts of residential burglary. The PSI provided:

> "On April 28, 2005, with the then minor, Derrick Jones, having been adjudicated delinquent in the original Petition alleging Assault, and the 1st, 2nd and 3rd

---

[1]The docket sheet for the 2004 juvenile proceeding was not made a part of the record.

- 2 -

Supplemental Petitions alleging: Burglary, Criminal Trespass to Land, Knowingly Damage to Property and Residential Burglary, three (3) Counts. Derrick Jones was sentenced to 5 years and 8 months Probation, until his 21st Birthday in the aforementioned offenses, with the first nine (9) months of Probation to be under the directive of Intensive Probation Supervision ***."

After considering various factors in aggravation and mitigation, the court sentenced defendant to an extended-term sentence of 24 years' imprisonment. Defendant's motion to reconsider his sentence was subsequently denied.

¶ 6       On direct review, defendant did not challenge his conviction for aggravated robbery but did challenge his extended-term sentence. Defendant first argued that his extended-term sentence violated his sixth amendment right to a jury trial pursuant to the Supreme Court's ruling in *Apprendi*, because the fact of his juvenile adjudication was neither proven to a jury beyond a reasonable doubt nor alleged in the indictment. The appellate court rejected his contention, finding that a prior adjudication of delinquency was sufficiently analogous to a prior criminal conviction to fall under the prior-conviction exception in *Apprendi*. 2015 IL App (3d) 130053, ¶ 38. The court reasoned that because due process does not require the right to a jury trial in juvenile proceedings, the absence of a right to a jury trial does not undermine the reliability of a juvenile proceeding. *Id.* ¶ 37. It further stated that a juvenile adjudication "reached only where all constitutionally required procedural safeguards are in place, is a no less reliable basis for the enhancement of a sentence than is a standard adult criminal conviction." *Id.* ¶ 36. Defendant also argued in the alternative that the circuit court improperly relied upon the PSI in determining the fact of his prior juvenile adjudication in contravention of the Supreme Court's ruling in *Shepard*, contending that a PSI is "particularly unreliable" in determining the fact of a prior adjudication of delinquency, as opposed to a prior criminal conviction. The appellate court also rejected this contention, finding that information in a PSI may be used as the basis for sentence enhancement without running afoul of *Shepard* and that the PSI unequivocally indicated defendant had been adjudicated delinquent pursuant to a petition alleging three counts of residential burglary, a Class 1 felony. *Id.* ¶ 47. The appellate court affirmed the judgment of the circuit court of Will County. *Id.* ¶ 50.

¶ 7       We granted defendant's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2013); R. 612 (eff. Feb. 6, 2013)) and affirm the judgment of the appellate court.

¶ 8                                    II. ANALYSIS

¶ 9       On appeal, defendant contends that a prior juvenile delinquency adjudication is not the equivalent of a prior conviction for purposes of extended-term sentencing under *Apprendi* and that such a fact must be alleged in the indictment and proven beyond a reasonable doubt. Alternatively, defendant contends that even if a prior adjudication of delinquency can qualify as a prior conviction for purposes of extended-term sentencing, the information contained in his PSI failed to conclusively establish that he had been adjudicated delinquent of residential burglary. Defendant acknowledges that he failed to preserve these issues for review but argues that an *Apprendi* violation may be reviewed as plain error where, as here, the violation was prejudicial to him.

¶ 10      It is well settled that the plain error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely

balanced that the error alone threatened to tip the scales of justice against the defendant or (2) a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and the integrity of the judicial process, regardless of the closeness of the evidence. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 70; *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). Our decision in *Herron* established two categories of plain error: prejudicial errors, which may have affected the outcome in a closely balanced case, and presumptively prejudicial errors, which must be remedied although they may not have affected the outcome. *People v. Nitz*, 219 Ill. 2d 400, 415 (2006). In both instances, the burden of persuasion remains with the defendant. *Herron*, 215 Ill. 2d at 187. We have held that potential *Apprendi* violations fall under the first category of prejudicial errors and have required defendants to prove that they were prejudiced by the error. *Nitz*, 219 Ill. 2d at 415. In addressing a plain error argument, we first consider whether error occurred. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 70. Review of this issue presents a question of law, which we review *de novo*. *People v. Hopkins*, 201 Ill. 2d 26, 36 (2002).

¶ 11                            A. *Apprendi*'s Prior-Conviction Exception

¶ 12        We first consider defendant's argument based on *Apprendi*. As noted above, the offense of aggravated robbery is a Class 1 felony. 720 ILCS 5/18-5(b) (West 2010) (repealed by Pub. Act 97-1108 (eff. Jan. 1, 2013)). The standard sentencing range for a Class 1 felony is 4 to 15 years. 730 ILCS 5/5-4.5-30(a) (West 2010). The extended-term sentencing range for a Class 1 felony is 15 to 30 years. *Id.* Section 5-5-3.2 of the Unified Code of Corrections (Code of Corrections) sets forth various factors that the court may consider as a reason to impose an extended-term sentence. 730 ILCS 5/5-5-3.2(b) (West 2010). Relevant here is the factor in subsection (b)(7) of section 5-5-3.2, which governs "[w]hen a defendant who was at least 17 years of age at the time of the commission of the offense is convicted of a felony and has been previously adjudicated a delinquent minor under the Juvenile Court Act of 1987 for an act that if committed by an adult would be a Class X or Class 1 felony when the conviction has occurred within 10 years after the previous adjudication, excluding time spent in custody." 730 ILCS 5/5-5-3.2(b)(7) (West 2010). The offense of residential burglary is a Class 1 felony. 720 ILCS 5/19-3(b) (West 2010). Based on the information in the PSI that defendant had been adjudicated delinquent of the offense of residential burglary, section 5-5-3.2(b)(7) of the Code of Corrections authorized the circuit court to impose an extended-term sentence. Therefore, we consider whether the manner in which the court imposed the sentence violated the rule set forth in *Apprendi*.

¶ 13        In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The Court found unconstitutional a New Jersey hate-crime statute that permitted an increase in the defendant's maximum prison sentence based on the trial judge's finding by a preponderance of the evidence that the defendant had acted with purpose to intimidate the victim based on particular characteristics of the victim. *Id.* at 491. The court emphasized, "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." *Id.* at 496.

- 4 -

¶ 14    In February 2001, our legislature amended section 111-3(c-5) of the Code of Criminal Procedure of 1963 (Criminal Code) (Pub. Act 91-953 (eff. Feb. 23, 2001) (adding 725 ILCS 5/111-3(c-5))) in response to the decision in *Apprendi*. This amendment brought the Criminal Code into conformity with *Apprendi*, expressly incorporating the prior-conviction exception as well as the due process protections afforded to defendants when an extended-term sentence is sought. Section 111-3(c-5) of the Criminal Code provides in relevant part: "Notwithstanding any other provision of law, in all cases in which the imposition of the death penalty is not a possibility, if an alleged fact (other than the fact of a prior conviction) is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for the offense, the alleged fact must be included in the charging instrument or otherwise provided to the defendant through a written notification before trial, submitted to a trier of fact as an aggravating factor, and proved beyond a reasonable doubt." 725 ILCS 5/111-3(c-5) (West 2010).

¶ 15    The question here is whether defendant's juvenile adjudication, which qualified defendant for an extended-term sentence, falls within *Apprendi*'s prior-conviction exception and, in turn, the exception in section 111-3(c-5) of the Criminal Code. This question is an issue of first impression before this court.

¶ 16    To fully understand *Apprendi*'s holding, we must examine some of the cases that preceded it, namely *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and *Jones v. United States*, 526 U.S. 227 (1999). In *Almendarez-Torres*, the Court first recognized the prior-conviction exception. There, the defendant was charged pursuant to a federal statute with the offense of illegal reentry to the United States by a deported alien. The offense authorized a prison term of up to two years. A subsection of the statute authorized a prison term of up to 20 years if the defendant had been deported subsequent to a conviction for the commission of an aggravated felony. The question before the Court was whether the subsection of the statute defined a separate offense or simply authorized an enhanced penalty. *Almendarez-Torres*, 523 U.S. at 226. If the prior aggravated felony conviction was a separate offense, the State was required to charge the conviction in the indictment (and prove it beyond a reasonable doubt to a jury). *Id.* If the prior conviction merely authorized an enhanced sentence, then the prior conviction was not an element of the offense and need not be charged. *Id.* The Court concluded that the subsection was a penalty provision that authorized a court to increase the sentence for a recidivist but did not define a separate offense. *Id.* It reasoned that the relevant statutory subject matter at issue was recidivism, which was "as typical a sentencing factor as one might imagine." *Id.* at 230.

¶ 17    In *Jones*, the Court considered whether a federal carjacking statute defined three distinct offenses or a single offense with a choice of three maximum penalties, two of them dependent on sentencing factors "exempt from the requirements of charge and jury verdict." *Jones*, 526 U.S at 229. The statute's first subsection authorized a maximum sentence of 15 years. The second and third subsections authorized maximum sentences of 25 years and life imprisonment, respectively, if the carjacking resulted in serious bodily injury or death. The Court noted that the second and third subsections provided for "steeply" higher penalties and also conditioned these penalties on further facts. It stated that "[i]t is at best questionable whether the specification of facts sufficient to increase a penalty range by two-thirds, let alone from 15 years to life, was meant to carry none of the process safeguards that elements of an offense bring with them for a defendant's benefit." *Id.* at 233. It concluded that the statute

defined three separate offenses with distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict. *Id.* at 252. In distinguishing its holding from *Almendarez-Torres*, the Court reiterated that it viewed recidivism differently from other factors that enlarge the possible penalty for an offense. The Court stated, "One basis for that possible constitutional distinctiveness is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense, and certainly unlike the factor before us in this case, a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Id.* at 249.

¶ 18    Since *Apprendi* was decided, state and federal courts have not been uniform in concluding whether a juvenile adjudication is the equivalent of a prior conviction under *Apprendi* for sentencing purposes. The Ninth Circuit Court of Appeals was the first court to address the issue in *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001). In a split decision, the court determined that the prior-conviction exception must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. *Id.* at 1194. It concluded that juvenile adjudications that do not include the right to a jury trial and the reasonable doubt burden of proof do not fall within the prior-conviction exception. *Id.* The court relied on the language in *Apprendi* that referred to accepting the validity of a prior judgment of conviction that was entered in a proceeding in which the defendant had the right to a jury trial and the right to require proof of guilt beyond a reasonable doubt. *Id.* It also relied on the language in *Jones* that prior convictions are distinct because they were established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees. *Id.* at 1193. The court characterized these constitutional procedural safeguards as the "fundamental triumvirate of procedural protections." *Id.*

¶ 19    The dissent in *Tighe* found that the court had reached an "unsupportable conclusion" by taking the language in *Jones* and making a "quantum leap." *Id.* at 1200 (Brunetti, J., dissenting). The dissent believed that the language in *Jones* only stood for the basic proposition that Congress had the constitutional power to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant presumably received all the process that was due when he was convicted of the prior crime. *Id.* It explained that, for adults, such process would include the right to a jury trial. For juveniles, however, such process would not include that right. Therefore, the dissent concluded that when a juvenile adjudication is the result of a proceeding in which a juvenile has received all the process constitutionally due at the juvenile stage, there is no constitutional problem in using that adjudication to support a later sentencing enhancement. *Id.*

¶ 20    Since *Tighe*, numerous courts have had the opportunity to address this issue. As a result, there has been more agreement with the *Tighe* dissent. Agreeing with the *Tighe* dissent and adopting what would become the majority view, in *United States v. Smalley*, 294 F.3d 1030 (8th Cir. 2002), the Eighth Circuit Court of Appeals concluded that juvenile adjudications could be characterized as "prior convictions" for *Apprendi* purposes. *Id.* at 1033. The court explained that *Apprendi* did not preclude such a conclusion, specifically noting "[w]e think that while the [*Apprendi*] Court established what constitutes sufficient procedural safeguards (a right to jury trial and proof beyond a reasonable doubt), and what does not (judge-made findings under a lesser standard of proof), the Court did not take a position on possibilities that lie in between these two poles." *Id.* at 1032. Like the *Tighe* dissent, the court also determined

that the language in *Jones* that referred to the " 'fundamental triumvirate of procedural protections' " was not intended to define the term " 'prior conviction' " for constitutional purposes as a conviction that " 'ha[s] been established through procedures satisfying fair notice, reasonable doubt, and jury trial guarantees.' " *Id.* (quoting *Tighe*, 266 F.3d at 1193-94). The court reasoned that the issue "should not turn on the narrow parsing of words, but on an examination of whether juvenile adjudications, like adult convictions, are so reliable that due process of law is not offended by such an exemption." *Id.* at 1033. Noting that the procedural protections afforded to juveniles include the right to notice, the right to counsel, the right to confront and cross-examine witnesses, the privilege against self-incrimination, and proof of guilt beyond a reasonable doubt, it concluded that these safeguards were "more than sufficient to ensure the reliability that *Apprendi* requires." *Id.* Specifically addressing the lack of a right to a jury for juveniles, the court believed that the lack of such right did not undermine the reliability of adjudications in any significant way because the use of a jury in the juvenile context is not constitutionally required and, moreover, would not strengthen the fact-finding function. *Id.*

¶ 21        Joining the Eighth Circuit and embracing the majority view that a juvenile adjudication falls within the *Apprendi* prior-conviction exception are the Courts of Appeal for the First, Third, Fourth, Sixth, Seventh, and Eleventh Circuits. See *United States v. Jones*, 332 F.3d 688, 696 (3d Cir. 2003) (because due process does not require providing juveniles with the right to a jury trial, it follows that when a juvenile is adjudicated guilty beyond a reasonable doubt in a bench trial that affords all the due process protections that are required, the adjudication can properly be characterized as a prior conviction for *Apprendi* purposes); *United States v. Burge*, 407 F.3d 1183, 1191 (11th Cir. 2005) (a prior nonjury juvenile adjudication that was afforded all constitutionally required procedural safeguards can be characterized as a prior conviction for *Apprendi* purposes); *United States v. Crowell*, 493 F.3d 744, 750 (6th Cir. 2007) (the use of "procedurally sound" juvenile adjudications to enhance a sentence does not violate due process because juvenile adjudication proceedings provide sufficient procedural safeguards to satisfy the reliability requirement "that is at the heart of *Apprendi*"); *United States v. Matthews*, 498 F.3d 25, 35 (1st Cir. 2007) (finding no distinction between juvenile adjudications and adult convictions for purposes of *Apprendi*'s prior-conviction exception since both reflect "the sort of proven prior conduct that courts historically have used in sentencing"); *United States v. Wright*, 594 F.3d 259, 264 (4th Cir. 2010) (because the defendant received all the process that was due at his nonjury juvenile delinquency proceeding, the use of his juvenile adjudication to enhance his sentence did not violate *Apprendi*); *Welch v. United States*, 604 F.3d 408, 429 (7th Cir. 2010) (a prior juvenile adjudication, where the defendant received all the protections to which he was constitutionally entitled, is a prior conviction under *Apprendi*).

¶ 22        State supreme courts that have also joined the majority view are Kansas, Indiana, Minnesota, Washington, and California. See *State v. Hitt*, 42 P.3d 732, 739-40 (Kan. 2002); *Ryle v. State*, 842 N.E.2d 320, 321-23 (Ind. 2005); *State v. McFee*, 721 N.W.2d 607, 616-19 (Minn. 2006); *State v. Weber*, 149 P.3d 646, 653 (Wash. 2006) (*en banc*); *People v. Nguyen*, 209 P.3d 946, 957-58 (Cal. 2009).

¶ 23        Taking a middle ground position is the Supreme Court of Oregon. In *State v. Harris*, 118 P.3d 236, 245-46 (Or. 2005) (*en banc*), the court held that the use of prior juvenile adjudications as sentencing factors does not violate the jury trial right guaranteed by the sixth amendment. *Id.* However, the court qualified its holding by stating that the sixth amendment

- 7 -

also requires that when such an adjudication is offered as an enhancement factor to increase a criminal sentence, its existence must either be proved to a trier of fact or be admitted by a defendant for sentencing purposes following an informed and knowing waiver. *Id.* at 246.

¶ 24    Agreeing with *Tighe* and joining the minority viewpoint is the Supreme Court of Louisiana. In *State v. Brown*, 879 So. 2d 1276 (La. 2004), the court held that because juveniles do not have a right to a jury trial in juvenile adjudicatory proceedings, juvenile adjudications cannot be used to enhance adult felony convictions. *Id.* at 1288. The court reasoned that although juvenile adjudications are sufficiently reliable without a jury trial to support dispositions within the juvenile system, those adjudications are not sufficiently reliable under *Apprendi* to support enhanced sentencing for adults. *Id.* The dissenting justice disagreed, concluding that "a fair reading of *Apprendi*" did not preclude the use of a juvenile adjudication to enhance an adult criminal sentence. *Id.* at 1290-91 (Traylor, J., dissenting). The dissent reasoned that when a juvenile adjudication comports with the requirements of fundamental fairness as set forth by the Supreme Court, it is constitutionally permissible to use that adjudication to enhance an adult criminal sentence. *Id.* at 1291.

¶ 25    Turning to this court's case law, although this issue is one of first impression, we did acknowledge and briefly discuss the issue in *People v. Taylor*, 221 Ill. 2d 157 (2006). In *Taylor*, we considered whether a minor who had been adjudicated delinquent was considered a "person convicted of a felony" for purposes of the offense of escape as set forth in section 31-6(a) of the Criminal Code of 1961 (720 ILCS 5/31-6(a) (West 1998)). Ultimately, we concluded that for purposes of the escape statute, a juvenile adjudication could not be considered tantamount to a felony conviction. *Taylor*, 221 Ill. 2d at 170. Relevant here is our statement that the issue addressed in *Taylor* was "to be distinguished from the somewhat analogous issue of whether a juvenile adjudication is considered a 'prior conviction' for sentencing enhancement purposes under *Apprendi*." *Id.* at 173. We noted the split among the federal circuits in addressing this issue and stated "[w]e take no position here with respect to the division among the federal circuits." *Id.* at 175. Although *Taylor* included a brief discussion of the issue we address in this appeal, it is clear that our holding in *Taylor* is distinct from the question now presented, and our conclusion in *Taylor* has no bearing on our analysis here.

¶ 26    Thus, we turn to the Supreme Court's decision in *McKeiver v. Pennsylvania*, 403 U.S. 528 (1971) (plurality opinion). In *McKeiver*, the Supreme Court held that there is no constitutional right to a jury trial in juvenile adjudicatory proceedings. *Id.* at 545. The Court reasoned that "[t]he imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the factfinding function, and would, contrarily, provide an attrition of the juvenile court's assumed ability to function in a unique manner." *Id.* at 547.

¶ 27    In Illinois, article V of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-101 *et seq.* (West 2010)) governs juvenile delinquency proceedings. It aims to balance a community's interest in holding juveniles accountable for their unlawful conduct with attempting to rehabilitate those juveniles. *In re Rodney H.*, 223 Ill. 2d 510, 520 (2006). The "important purposes" of article V are to protect citizens from juvenile crime, hold each juvenile offender directly accountable for his or her acts, provide an individualized assessment of each alleged and adjudicated delinquent juvenile in order to rehabilitate and to prevent further delinquent behavior, and provide due process as required by the Constitutions of the

United States and the State of Illinois. 705 ILCS 405/5-101(1) (West 2010). Further, article V provides that "minors shall have all the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors," except that "[m]inors shall not have the right to a jury trial unless specifically provided by this Article." 705 ILCS 405/5-101(3) (West 2010). Article V only provides the right to a jury trial when a minor is tried (1) as a habitual juvenile offender (705 ILCS 405/5-815(d) (West 2010)), (2) as a violent juvenile offender (705 ILCS 405/5-820(d) (West 2010)), or (3) under the extended juvenile jurisdiction provision (705 ILCS 405/5-810 (West 2010)). Because defendant's delinquency proceedings did not involve any of the above provisions, he did not have the right to a jury trial in those proceedings.

¶ 28    Here, we find the majority position persuasive and conclude that a prior juvenile adjudication of delinquency falls within *Apprendi*'s prior-conviction exception and the exception in section 111-3(c-5) of the Criminal Code. The Supreme Court made clear in *McKeiver* that due process does not require the right to a jury trial in juvenile proceedings, reasoning that a jury trial "would not strengthen greatly, if at all, the factfinding function." *McKeiver*, 403 U.S. at 545-47. In *Almendarez-Torres*, the Court repeatedly emphasized the tradition of regarding recidivism as a sentencing factor, and in *Jones*, the Court explained that a prior conviction was different from other factors that increase the sentence for an offense because of the procedural safeguards inherent in the proceedings that resulted in that conviction. *Almendarez-Torres*, 523 U.S. at 230; *Jones*, 526 U.S. at 249. The Court solidified those holdings in *Apprendi*, further noting the "vast" difference between accepting the validity of a prior conviction and allowing a judge to find a required fact under a lesser standard of proof. *Apprendi*, 530 U.S. at 496.

¶ 29    A juvenile adjudication of delinquency is similar to a prior conviction in the sense that both are the result of a person's prior unlawful behavior or recidivism. The proceedings that result in a juvenile adjudication contain the same constitutional procedural safeguards as those proceedings that result in a prior conviction, except the jury trial right (unless specified by article V of the Juvenile Court Act). However, because there is no constitutional right to a jury trial in juvenile proceedings, a juvenile adjudication and a prior conviction both result from proceedings in which the minor or the defendant received constitutionally sufficient procedural safeguards. A juvenile adjudication, therefore, is no less valid or reliable a form of recidivism than is a prior conviction. For purposes of extended-term sentencing, they are on equal footing. Though defendant did not have the right to a jury trial in his delinquency proceedings, he did have all the other procedural rights of adults in criminal proceedings, such as the right to notice, counsel, confrontation, cross-examination, and proof of guilt beyond a reasonable doubt. See 705 ILCS 405/5-101(3), 5-525, 5-530, 5-605, 5-610 (West 2010). The presence of such process in juvenile proceedings forecloses any conclusion that a juvenile adjudication is not the equivalent of a prior conviction under *Apprendi*. We note the following reasoning of the Fourth Circuit. In *Wright*, the court stated, "there is no reason to hold that an adjudication that is constitutionally sufficient to commit a juvenile to confinement, in some instances until age twenty-one, is somehow off limits for sentencing consideration if the same juvenile later [commits an offense as an adult]." *Wright*, 594 F.3d at 264. While the Juvenile Court Act promotes accountability as well as rehabilitation, section 5-5-3.2(b)(7) of the Code of Corrections anticipates that those juveniles who are not rehabilitated and commit crimes as adults may be punished in accordance with their entire criminal history. Considering a

defendant's entire recidivist past is in no way incongruent with the aims of the Juvenile Court Act.

¶ 30    Moreover, we do not believe that the Supreme Court's language in *Apprendi* and *Jones* that referred to the jury trial right was intended to include only those prior convictions that included that right. The *Apprendi* Court noted the jury trial right as one of the procedural safeguards that assured the validity of a prior conviction, but it did not specifically condition the prior-conviction exception upon that right. *Apprendi*, 530 U.S. at 496. Nor did it specifically identify a jury trial as a required procedural safeguard. We agree with the Eighth Circuit's view that "while the [*Apprendi*] Court established what constitutes sufficient procedural safeguards (a right to jury trial and proof beyond a reasonable doubt), and what does not (judge-made findings under a lesser standard of proof), the Court did not take a position on possibilities that lie in between these two poles." *Smalley*, 294 F.3d at 1032.

¶ 31    We are not persuaded by defendant's contentions to the contrary. Defendant argues that because section 5-5-3.2(b)(7) of the Code of Corrections and section 111-3(c-5) of the Criminal Code do not expressly define a prior delinquency adjudication as a prior conviction, defendant's prior adjudication does not fall within *Apprendi*'s prior-conviction exception. He maintains that although section 5-5-3.2(b)(7) of the Code of Corrections allows a court to use an adult offender's prior delinquency adjudication for a Class X or Class 1 felony as a basis for imposing an extended-term sentence, the statute is silent as to the manner in which the prior adjudication must be pled or proven. Defendant relies on case law for support as well as the Sex Offender Registration Act (Registration Act) (730 ILCS 150/1 *et seq.* (West 2010)), wherein the legislature expressly equated a juvenile adjudication with a conviction. 730 ILCS 150/2 (West 2010).

¶ 32    We find defendant's reliance on case law and the Registration Act misplaced. He relies on *People v. Villa*, 2011 IL 110777, where we rejected the State's argument that juvenile adjudications should be put on equal footing with criminal convictions for impeachment purposes, and *In re W.W.*, 97 Ill. 2d 53 (1983), where we determined that a conviction was not the same as a juvenile adjudication for purposes of a statute authorizing State's Attorney fees to defend an appeal. *Villa*, 2011 IL 110777, ¶ 40; *In re W.W.*, 97 Ill. 2d at 57-58.[2] However, both *Villa* and *In re W.W.* involved the interpretation of statutes, which has no bearing on the issue presented here. We reiterate that in *Taylor* we made clear that our interpretation of the phrase "person convicted of a felony" for purposes of the offense of escape was to be distinguished from the issue of whether a juvenile adjudication is considered a prior conviction for sentencing enhancement purposes under *Apprendi*. Likewise, regarding defendant's reliance on the Registration Act, the fact that the legislature expressly equated a juvenile adjudication with a conviction in that statute also has no bearing on the issue presented here. Further, the purpose of the amendment to section 111-3(c-5) of the Criminal Code was to codify *Apprendi*'s holding to bring the Criminal Code into conformity with *Apprendi*. Thus, we reject defendant's contention that because section 5-5-3.2(b)(7) of the Code of Corrections and section 111-3(c-5) of the Criminal Code do not expressly define a juvenile adjudication as

---

[2]Defendant also relies on *People v. Rankin*, 297 Ill. App. 3d 818 (1998); however, he concedes that due to an amendment to the sentencing statute, it does not address the issue presented here. Therefore, we need not address it.

a prior conviction, his prior adjudication does not fall within *Apprendi*'s prior-conviction exception.

¶ 33    We conclude that defendant's prior juvenile adjudication, which qualified defendant for an extended-term sentence, is the equivalent of a prior conviction under *Apprendi* and falls within *Apprendi*'s prior-conviction exception as well as the exception in section 111-3(c-5) of the Criminal Code. The State was not required to allege the fact of his juvenile adjudication in the indictment or prove its existence beyond a reasonable doubt. Since we find that no error occurred here, defendant cannot establish plain error.

¶ 34                                B. Defendant's PSI

¶ 35    We next consider whether the information contained in defendant's PSI established that he had been adjudicated delinquent of residential burglary. Defendant contends that the information contained in the PSI was "too ambiguous, and too tenuous, to conclusively establish" that he had been adjudicated delinquent of residential burglary. He argues that his PSI suffered from the same infirmities as the documents found unreliable in *Shepard*.

¶ 36    The issue in *Shepard* concerned what sources a court may constitutionally rely upon in its role as fact finder at sentencing. In *Shepard*, the United States Supreme Court held that a court sentencing a defendant under the Armed Career Criminal Act of 1984 (ACCA) (18 U.S.C. § 924(e) (2006)), which is thus required to determine whether a burglary is a "generic burglary" under the statute, is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented. *Shepard*, 544 U.S. at 16. A sentencing judge may not look to police reports or complaint applications to make the determination. *Id.*

¶ 37    This court has previously held that a PSI is generally a reliable source for the purpose of inquiring into a defendant's criminal history. *People v. Williams*, 149 Ill. 2d 467, 491 (1992). A PSI is compiled pursuant to statutory guidelines set forth in the Code of Corrections, which require the inclusion of certain information, including the defendant's "history of delinquency." 730 ILCS 5/5-3-2(a)(1) (West 2010). Additionally, the Juvenile Court Act permits juvenile court records to be accessed under certain circumstances, including when a minor becomes 18 years or older and is the subject of criminal proceedings. 705 ILCS 405/1-8(A)(4)(d) (West 2014).

¶ 38    We initially note that the accuracy of the PSI with regard to defendant's prior adjudication for residential burglary was not disputed at the sentencing hearing. Defense counsel only sought to amend the PSI to include defendant's claim that he was a father, which the PSI did not reflect. An extensive discussion thus ensued as to whether defendant could have been the father of a recently born child based on the dates of his incarceration. However, there was no question or discussion as to defendant's criminal history as set forth in the PSI, despite several references that defendant was eligible for an extended-term sentence based on his prior juvenile adjudication for residential burglary. Although defendant points out that prior to trial he denied having a prior adjudication for residential burglary, he clearly abandoned that claim at sentencing. Had defendant continued to believe he did not have a prior adjudication for residential burglary, he certainly knew how to inform defense counsel and the court as to the alleged inaccuracy of the PSI, as he did with his claim that he was a father.

¶ 39　　　　Here, we find that defendant's PSI established he had been adjudicated delinquent of residential burglary. As set forth above, the PSI provided that in 2005, defendant had been adjudicated delinquent of the offenses alleged in the numerous petitions, including a supplemental petition alleging three counts of residential burglary, and had been sentenced to probation until his twenty-first birthday for the aforementioned offenses. In addition to the above language, the PSI enumerated each of the offenses alleged in the petitions and listed a disposition next to each one. The disposition for each of the offenses, which included the three counts of residential burglary, was "Juvenile Probation." As the appellate court aptly found, defendant's PSI was "unequivocal" with respect to his prior juvenile adjudication. We disagree with defendant that the information contained in the PSI was ambiguous or tenuous.

¶ 40　　　　Further, the use of defendant's PSI does not run afoul of *Shepard*. The Court in *Shepard* was concerned with what types of documents a court can rely upon at sentencing to determine the facts *about* a conviction, rather than determining *if* the defendant had a prior conviction. *Shepard*, 544 U.S. at 25-26. Here, the circuit court only recognized that defendant had a prior adjudication for residential burglary; it did not engage in any judicial fact finding about that adjudication. Additionally, a PSI is of a markedly different character than a police report or complaint application, with which the Court in *Shepard* was concerned. As noted above, a PSI, with its statutorily mandated requirements, is generally viewed as a reliable source of a defendant's criminal history. We conclude that defendant's PSI conclusively established he had been adjudicated delinquent of residential burglary and find no error in the court's reliance on the PSI. Accordingly, since there is no error, there can be no plain error and no basis to excuse defendant's procedural default. See, *e.g.*, *People v. Ceja*, 204 Ill. 2d 332, 356 (2003); *People v. Sims*, 192 Ill. 2d 592, 624 (2000).

¶ 41　　　　　　　　　　　　　　　III. CONCLUSION

¶ 42　　　　We conclude that defendant's prior juvenile adjudication is the equivalent of a prior conviction under *Apprendi* and falls within *Apprendi*'s prior-conviction exception, as well as the exception in section 111-3(c-5) of the Criminal Code, and that defendant's PSI conclusively established the fact of his prior juvenile adjudication for residential burglary. For the foregoing reasons, we affirm the judgment of the appellate court.

¶ 43　　　　Appellate court judgment affirmed.

¶ 44　　　　JUSTICE BURKE, dissenting:

¶ 45　　　　Defendant's principal argument in this appeal is that his extended-term sentence was imposed in violation of section 111-3(c-5) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3(c-5) (West 2010)) because the sentence was based, in part, on a prior juvenile delinquency adjudication which was neither pled in the indictment nor proved to the jury beyond a reasonable doubt. I agree. For this reason I cannot join the majority opinion and, therefore, must respectfully dissent.

¶ 46　　　　　　　　　　　　　　　　　I

¶ 47　　　　There is no dispute that, under Illinois law, a trial court may use an adult offender's prior juvenile delinquency adjudication as a factor to consider when deciding whether to impose an

extended-term sentence, so long as the adjudication involved an act that, if committed by an adult, would be a Class X or Class 1 felony and the conviction occurred within 10 years after the adjudication. 730 ILCS 5/5-5-3.2(b)(7) (West 2010). What is at issue in this appeal is the manner in which the prior adjudication must be pled or proven before it may be used by the trial court in this way.

¶ 48    In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held that the due process clause of the fourteenth amendment requires any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a "prior conviction," to be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 476, 490. After *Apprendi* was decided, the General Assembly enacted section 111-3(c-5) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3(c-5) (West 2010)) to bring our state law into conformity with *Apprendi*'s constitutional requirements.

¶ 49    Section 111-3(c-5) provides, in pertinent part:

> "[I]f an alleged fact (other than the fact of a prior conviction) is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for the offense, the alleged fact must be included in the charging instrument or otherwise provided to the defendant through a written notification before trial, submitted to a trier of fact as an aggravating factor, and proved beyond a reasonable doubt."

¶ 50    Both *Apprendi* and section 111-3(c-5) explicitly exempt only "prior convictions" from those facts that must be pled in the charging instrument and proved beyond a reasonable doubt before they can be used as an aggravating factor to increase the penalty for an offense. Neither *Apprendi* nor section 111-3(c-5) makes any mention of prior juvenile delinquency adjudications.

¶ 51    Before this court, defendant contends that a juvenile delinquency adjudication is not a "conviction" within the meaning of section 111-3(c-5). Therefore, defendant maintains, a trial court may only base an extended-term sentence on a prior adjudication if that adjudication was included in the charging instrument and proved to the fact finder beyond a reasonable doubt. In this case, however, defendant's prior adjudication was referenced only in a presentencing investigative report. Accordingly, defendant asserts that the trial court violated section 111-3(c-5) and committed plain error when it imposed an extended-term sentence.

¶ 52    Defendant's argument raises a question of statutory construction. When construing a statute, we first look to the language of the statute itself, which is the surest and most reliable indicator of the legislature's intent. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). The language of the statute must be given its plain and ordinary meaning, and where the statutory language is clear and unambiguous, we may not resort to other aids of construction. *People v. Taylor*, 221 Ill. 2d 157, 162 (2006); *People v. Tucker*, 167 Ill. 2d 431, 435 (1995). In addition, this court may not correct what we believe to be a legislative oversight by rewriting a statute in a manner inconsistent with its clear and unambiguous language under the guise of statutory interpretation. *Taylor*, 221 Ill. 2d at 162-63; *Pullen*, 192 Ill. 2d at 42.

¶ 53    In construing the term "conviction" in section 111-3(c-5), we do not write on a clean slate. Illinois courts have long held that, when used in a statutory enactment, the word "conviction" does not include juvenile adjudications. For example, in *In re W.W.*, 97 Ill. 2d 53 (1983), this court held that section 8 of "An Act concerning fees and salaries, and to classify the several

counties of this state with reference thereto" (Ill. Rev. Stat. 1979, ch. 53, ¶ 8), which provided that State's Attorney fees are to be taxed as costs and collected from the "defendant" upon "conviction," had no application to juvenile proceedings. In so holding, this court concluded that "a minor is neither 'convicted' nor considered a 'defendant' or an 'accused.' " *In re W.W.*, 97 Ill. 2d at 57.

¶ 54   Similarly, in *People v. Rankin*, 297 Ill. App. 3d 818 (1998), our appellate court found no authority for a trial court to impose an extended-term sentence based on the defendant's juvenile adjudication under the then-existing version of the statute. The court reached this conclusion because juvenile proceedings are not criminal and a juvenile adjudication does not constitute a conviction. *Id.* at 824-25.

¶ 55   In *People v. Taylor*, 221 Ill. 2d 157 (2006), this court considered whether a minor who had been adjudicated delinquent for a felony offense could be considered a "person convicted of a felony" for purposes of our escape statute (720 ILCS 5/31-6(a) (West 1998)). In our discussion in *Taylor*, we distinguished the issue that was then before us from "the somewhat analogous issue of whether a juvenile adjudication is considered a 'prior conviction' for sentencing enhancement purposes under *Apprendi v. New Jersey*, 530 U.S. 466 *** (2000)." *Taylor*, 221 Ill. 2d at 173. We said:

> "We take no position here with respect to the division among the federal circuits. We only discuss the jurisprudence on the use of nonjury juvenile adjudications for *Apprendi* purposes because we find it helpful to our analysis to illustrate the important differences between the case before us and the federal cases cited above. In each of the federal cases, a statute specifically defined a 'conviction' as a prior juvenile adjudication for purposes of the offense at issue. Here, in contrast, the legislature has not defined the term 'conviction' in the escape statute to include juvenile adjudications. Moreover, the key issue in the present case involves proof of a prior conviction as *an element of the offense* where the applicable statute fails to define an 'adjudication' as a 'conviction.' Thus, the primary issue here turns on a question of statutory construction, while the principal issue in the federal cases turned on whether an adjudication could be classified as a prior conviction for *Apprendi* purposes, not on whether it could be classified as a 'conviction' for purposes of establishing an element of an offense. The distinction is critical, of course, because nothing in a penal statute may be construed against a defendant by intendment or implication ([*People v. Laubscher*, 183 Ill. 2d 330, 337 (1998)])." (Emphasis in original.) *Id.* at 175-76.

Citing *In re W.W.* and *Rankin*, we then went on to state the governing rule:

> "In the absence of a statute expressly defining a juvenile adjudication as a conviction, Illinois courts have consistently held that juvenile adjudications do not constitute convictions." *Id.* at 176.

¶ 56   Finally, and more recently, in *People v. Villa*, 2011 IL 110777, this court held that a juvenile adjudication was inadmissible against a testifying defendant for impeachment purposes. This conclusion rested, in part, on the fact that a juvenile adjudication is not the same as a criminal conviction. *Id.* ¶ 40.

¶ 57   Section 111-3(c-5) exempts only "convictions" from those facts that must be pled in the indictment and proved beyond a reasonable doubt before they can be used as an aggravating

factor to increase the penalty for an offense. Under long-standing case law, a juvenile delinquency adjudication is not a "conviction."

¶ 58    Further, it is worth noting that the General Assembly may have had good reason for treating juvenile adjudications differently than adult convictions under section 111-3(c-5). Requiring a juvenile adjudication to be pled and proven to a jury before it may be considered for extended-term sentencing provides the sentencing judge with additional information regarding the nature of the prior offense, including, in particular, the extent of the juvenile's culpability. See, *e.g.*, *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012) (noting the lack of maturity and diminished culpability of juveniles). In this way, the sentencing judge can make a more informed decision as to whether extended-term sentencing should be imposed on the adult offender.

¶ 59    Since section 111-3(c-5) does not equate juvenile adjudications with criminal convictions, the requirements of the statute had to be met before defendant's juvenile adjudication could be considered by the trial court in imposing an extended-term sentence. This means that the fact of the defendant's qualifying juvenile adjudication had to be included in the charging instrument or otherwise provided to the defendant through a written notification before trial, submitted to the trier of fact as an aggravating factor, and proved beyond a reasonable doubt. That did not occur here. In my view, the imposition of defendant's extended-term sentence under these circumstances constituted plain error.

¶ 60                                              II

¶ 61    Despite the foregoing, the majority holds that a juvenile adjudication is a "conviction" within the meaning of section 111-3(c-5). *Supra* ¶ 33. Notably, however, the majority reaches this conclusion without ever conducting any statutory analysis. Instead, the majority's determination is based solely on their examination of cases from other jurisdictions, both federal and state, which have considered whether, under *Apprendi*, it would violate a defendant's due process rights to treat a juvenile adjudication like a "prior conviction" and exempt the adjudication from *Apprendi*'s pleading and proof requirements.

¶ 62    After reviewing the split of authority on this issue, the majority agrees with the line of cases which holds that, even though a juvenile offender is not afforded the right to a jury trial, juvenile adjudications may be treated like "prior convictions" for *Apprendi* purposes because juvenile adjudications, like adult convictions, are sufficiently reliable so that due process is not offended by such an exemption. See, *e.g.*, *United States v. Smalley*, 294 F.3d 1030, 1033 (8th Cir. 2002). Having adopted this view, the majority then reasons that, because it would not violate defendant's due process rights to treat a juvenile adjudication like a "prior conviction," then it must follow that juvenile adjudications are included within the "prior conviction" exception in section 111-3(c-5). *Supra* ¶¶ 15, 33. I disagree.

¶ 63    The majority appears to be laboring under the misconception that a finding that it would not violate due process to treat a juvenile adjudication like a "prior conviction" under *Apprendi* means that an adjudication is equivalent to a conviction under section 111-3(c-5). But this is not true. Whether treating defendant's prior delinquency adjudication like a conviction for purposes of the *Apprendi* exception violates due process concerns is a separate question from whether our legislature intended the term "conviction" in our statutory provision to include a juvenile adjudication. Or, stated otherwise, it is one thing to say that a certain practice does not

violate due process; it is a completely different thing to say that the practice was authorized by our legislature in the first place.

¶ 64    Furthermore, as a general principle, courts of this state rely, whenever possible, on nonconstitutional grounds to decide cases (*Mulay v. Mulay*, 225 Ill. 2d 601 (2007) (citing *In re E.H.*, 224 Ill. 2d 172, 178 (2006) (listing cases))). The majority should therefore have considered first whether a juvenile adjudication may be deemed a "conviction" for purposes of section 111-3(c-5), as a matter of statutory interpretation, before determining whether defendant's due process rights were violated under *Apprendi*.

¶ 65    In Illinois, the rule is clear that, for statutory purposes, the term "conviction" does not include juvenile delinquency adjudications. It follows, therefore, that a juvenile adjudication is not a "conviction" within the meaning of section 111-3(c-5). Whether it would violate due process to base an extended-term sentence on a juvenile adjudication, as was done in this case, is an important issue. However, until such time as the General Assembly actually authorizes that practice under section 111-3(c-5), there is no need to reach the issue.

¶ 66    For the reasons set forth above, I dissent.

¶ 67    CHIEF JUSTICE GARMAN and JUSTICE KILBRIDE join in this dissent.