NOTICE

Decision filed 06/16/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220420-U

NO. 5-22-0420

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 04-CF-585 |
| | ) | |
| MATTHEW DAVIS, | ) | Honorable |
| | ) | Ronald R. Slemer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where defendant's guilty plea waived his right to written notice that the State intended to seek an enhanced sentence based on the brutal and heinous nature of defendant's conduct, the circuit court properly dismissed his postconviction petition which relied on the State's alleged failure to provide such notice as its central claim.  As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, Matthew Davis, appeals the circuit court's order dismissing his postconviction petition.  His appointed counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no reasonably meritorious contention that the court erred in doing so. Accordingly, it has filed a motion to withdraw as counsel along with a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987).  OSAD has notified defendant of its motion. This court has provided him with an opportunity to respond and he has filed a response.  However,

1

after considering the record on appeal, OSAD's memorandum, and supporting brief, and defendant's response, we agree that this appeal presents no reasonably meritorious issues. Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                                    BACKGROUND

¶ 4     In March 2004, the State charged defendant with 10 counts of first degree murder and numerous other offenses resulting from the death of Rachel Hayes. In June 2004, the State filed a written notice of its intent to seek the death penalty, citing three statutory bases.

¶ 5     One month later, defendant agreed to plead guilty to count I of the indictment, alleging first degree murder. In exchange, the State agreed not to seek the death penalty and to dismiss the remaining counts. Defense counsel further explained the agreement as follows:

> "We are agreeing as part of this agreement—as part of this plea agreement that there are facts sufficient beyond a reasonable doubt to prove brutal and heinous circumstances indicative of wanton cruelty which would allow the People to ask for either an extended term or for natural life without the possibility of parole. In exchange for this plea, the remaining Counts of II through the remainder of the Indictment would be dismissed in this matter, and we would have a full sentencing hearing in this cause."

¶ 6     The court read the statute under which defendant was charged, explained that the potential sentencing range could be anywhere from 40 years to natural life, and explained the rights defendant was waiving by entering the plea. Defendant said that he understood and that he wanted to plead guilty.

¶ 7     The State's factual basis provided that Brittany Dotson would testify that she and Hayes went to several bars in the Alton area on February 28, 2004. They met defendant, who made sexual

2

advances toward Hayes.  The next day, Dotson tried to call Hayes but got no answer.  She went to Hayes' house and, after entering through an unlocked door, found Hayes' body.

¶ 8    Dr. Raj Nanduri, who conducted Hayes' autopsy, noted numerous stab wounds to her chest, neck, left side, and back, and that there were numerous small penetrating lacerations to her chest. There were knife wounds to her vagina.  She concluded that Hayes died from stab wounds to the neck and chest.

¶ 9    Defendant admitted that he was drinking with Hayes and Dotson on the night in question but denied being in Hayes' home.  However, investigators discovered physical evidence tying defendant to the crime, including items with Hayes' blood on them in defendant's bedroom. Finding a sufficient factual basis and that the plea was voluntary, the court accepted it and scheduled a sentencing hearing.

¶ 10    At the start of the sentencing hearing, the court stated that the sentencing range was 40 years to natural life and that the defense was stipulating to a finding of heinous and brutal conduct. At the conclusion of the hearing, the court sentenced defendant to natural life imprisonment.

¶ 11    Defendant timely moved to withdraw his plea and reconsider the sentence.  The former motion alleged that plea counsel was ineffective in that they (1) did not review discovery with him, (2) did not inform him of several motions they filed on his behalf, (3) failed to hire expert witnesses or test DNA evidence, and (4) did not communicate with him.  The latter motion alleged the court erred in allowing two victim impact statements to be read, the prosecutor erred in referring to suppressed statements at the sentencing hearing, and the prosecutor erred in referring to rape and sexual assault during its closing argument although there was no evidence of those offenses.

¶ 12    The circuit court denied both motions.  On direct appeal, defendant's appointed counsel moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967).  We granted the motion

3

and affirmed. *People v. Davis*, No. 5-07-0607 (2009) (unpublished order under Supreme Court Rule 23). We first found that defendant's allegations of ineffective assistance had been refuted by the testimony of his attorneys, which the circuit court found more credible. *Id.*, slip order at 5.

¶ 13   We further found that the court properly denied the motion to reconsider the sentence, noting that its allegations were either legally untenable or contradicted by the record. *Id.*, slip order at 5-7. We specifically noted that defendant

> "stipulated in his guilty plea that there was sufficient evidence to prove that the murder had been accompanied by brutal and heinous circumstances indicative of wanton cruelty, thus permitting the imposition of a natural-life sentence. The evidence at the sentencing hearing was that the victim had been stabbed or cut 25 times, including two wounds inside the vagina." *Id.*, slip order at 7.

¶ 14   Our mandate issued on February 19, 2009. More than 11 years later, in 2020, defendant filed a postconviction petition. In it, he contended that (1) his natural life sentence was statutorily prohibited because his indictment did not specifically allege that the offense was accompanied by brutal and heinous conduct; (2) counsel was ineffective for failing to advise him how to handle the PSI process; (3) counsel was ineffective for advising him to accept a plea that was statutorily prohibited; (4) counsel was ineffective for failing to adequately represent him at sentencing; (5) postplea counsel was ineffective for failing to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017); (6) appellate counsel was ineffective for moving to withdraw when there were meritorious issues to raise on direct appeal; and (7) the circuit court erred in failing to properly admonish him pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). After the court granted defendant's motion to proceed *pro se*, he filed an amended petition adding a claim that the

4

court erred in considering the brutal and heinous nature of the offense to enhance his sentence when the State never alleged that element in the indictment.

¶ 15    In an answer to the petition, the State argued that defendant stipulated as part of the plea negotiations that the offense was accompanied by brutal and heinous conduct. The State argued that the "negotiations were made between the parties to avoid the Defendant facing a sentence of death, which the State was actively pursuing prior to the plea."

¶ 16    The State also moved to dismiss the petition. The State noted that the petition was filed 11 years after the direct appeal was decided, that our order stated that we had examined the entire record and found no issue meriting relief, and that the issues raised in the petition could have been raised on direct appeal.

¶ 17    At a hearing, defendant argued that his issues were not waived because he claimed that counsel on direct appeal was ineffective for failing to raise them. The State responded that defendant was not raising anything new that would justify filing the petition more than three years after the disposition of the direct appeal. During the hearing, defendant conceded that, if his sentence did conform to the statute, his petition raised no meritorious claims.

¶ 18    The court granted the motion to dismiss. Defendant timely appealed.

¶ 19                                                ANALYSIS

¶ 20    OSAD concludes that there is no reasonably meritorious argument that the circuit court erred in dismissing defendant's postconviction petition. OSAD observes, as defendant himself conceded, that defendant's claims in the petition essentially turn on the overarching contention that the court imposed an unauthorized sentence. OSAD concludes, however, that defendant's voluntary guilty plea waived this contention, and we agree.

5

¶ 21   Initially, we note that defendant's claims come too late.  The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights.  *Id.* § 122-1(a); *People v. Delton*, 227 Ill. 2d 247, 253 (2008).  Proceedings under the Act must be commenced, at the latest, within "3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence."  725 ILCS 5/122-1(c) (West 2020).  Moreover, issues that could have been raised on direct appeal, but were not, are forfeited for purposes of postconviction review.  *People v. Edwards*, 2012 IL 111711, ¶ 21.

¶ 22   Here, defendant was sentenced in 2004.  His direct appeal was decided in 2009, but he did not file his petition until 11 years later.  Further, the statute he cited existed prior to his plea and thus he could have raised the issue on direct appeal.  Although he argued that counsel on direct appeal was ineffective for failing to raise the issue, this does not explain his own failure to raise it until 11 years after the direct appeal was decided.  The State argued, and the trial court expressly found, that the issues could have been raised on direct appeal.  Thus, dismissal was proper on that basis.  In any event, however, defendant's issues are without merit.

¶ 23   Defendant pled guilty to count I of the indictment, alleging first degree murder under section 9-1(a)(1) of the Criminal Code of 1961, which provided:

> "(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
>
> > (1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another[.]" 720 ILCS 5/9-1(a)(1) (West 2004).

¶ 24    At the time of the defendant's sentencing, the nonextended sentence for first degree murder ranged from 20 to 60 years' imprisonment.  730 ILCS 5/5-8-1(a)(1)(a) (West 2004).  However, if a trier of fact found beyond a reasonable doubt "that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty," a defendant could be sentenced to natural-life imprisonment.  720 ILCS 5/9-1 (West 2004); 730 ILCS 5/5-8-1(b) (West 2004).

¶ 25    Section 111-3(c-5) of the Code of Criminal Procedure of 1963 provides in relevant part:

"Notwithstanding any other provision of law, in all cases in which the imposition of the death penalty is not a possibility, if an alleged fact (other than the fact of a prior conviction) is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for the offense, the alleged fact must be included in the charging instrument or otherwise provided to the defendant through a written notification before trial, submitted to a trier of fact as an aggravating factor, and proved beyond a reasonable doubt."  725 ILCS 5/111-3(c-5) (West 2004).

¶ 26    The legislature added section 111-3(c-5) in 2001 (Pub. Act 91-953 (eff. Feb. 23, 2001)) in response to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  Section 111-3(c-5) "brought the Criminal Code into conformity with *Apprendi*."  *People v. Jones*, 2016 IL 119391, ¶ 14.

¶ 27    The central premise of defendant's petition was that the State did not allege in the indictment that it intended to seek a natural-life sentence on the basis that the murder was accompanied by exceptionally brutal and heinous conduct.  He spun this basic contention into

7

several related claims: that the sentence was unauthorized by statute, that his various attorneys were ineffective for failing to realize that the sentence was unauthorized and object to it on that basis, that the court erred in admonishing him that he was eligible for a natural-life sentence, and that counsel's Rule 604(d) certificate was inaccurate because counsel had not made necessary amendments to his motions to raise this claim. See Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 28    As OSAD correctly points out, however, a voluntary guilty plea waives all nonjurisdictional defenses and defects. *People v. Mueller*, 2013 IL App (5th) 120566, ¶ 12. This rule applies to *Apprendi* claims. *People v. Jackson*, 199 Ill. 2d 286, 295 (2002).

¶ 29    Defendant acknowledges that under *Jackson* he waived his right to have the State prove the enhancing factors beyond a reasonable doubt, but he insists that this is not an *Apprendi* claim. He argues that section 111-3(c-5) contains an additional requirement not found in *Apprendi*, namely that the State allege in the indictment or provide written notice that it intends to seek an enhanced sentence. He contends that his guilty plea did not waive this claim.

¶ 30    *Jackson* is broader than defendant's reading of it. *Jackson* held that "by a guilty plea a criminal defendant does waive *Apprendi*-based sentencing objections on appeal." *Id. Jackson* thus stands for the proposition that a guilty plea waives *any* challenge to a sentence based on the principles of *Apprendi*. Defendant's challenge is clearly aimed at his sentence. He did not seek a written notice of the State's intent to seek an enhanced sentence. He wanted to have his natural-life sentence vacated. Thus, it is a "challenge to a sentence" that was waived by his guilty plea.

¶ 31    This conclusion is consistent with earlier cases, in which the supreme court held that, given that circuit courts' jurisdiction is conferred by the state constitution, defects in a charging instrument do not deprive the court of jurisdiction. *People v. Hughes*, 2012 IL 112817. Because defects in a charging instrument are not jurisdictional, they are covered by the rule that a guilty

8

plea waives all nonjurisdictional issues. In *People v. Myrieckes*, 315 Ill. App. 3d 478, 485 (2000), the court held that the defendant's guilty plea waived objections to the charging instrument. The court further noted that "it is not unlawful for the State and a defendant to bargain for a plea of guilty to even a nonexistent crime if the defendant receives a benefit." *Id.*

¶ 32 Defendant's argument comes down to one that the State failed to specifically notify him in writing that it intended to seek a natural-life sentence, despite the fact that its intention to do so was an integral part of the plea negotiations from the beginning. Defendant fails to explain why his guilty plea waived the fundamental right to have the State prove the aggravating factors beyond a reasonable doubt but did not waive the relatively formalistic right (at least under the facts here) to have the State provide written notice of its intent to prove the aggravating factors. Nor could he plausibly claim that he was prejudiced in any way by the State's alleged failure to provide formal notice.

¶ 33 Here, the State filed early in the case a written notice of intent to seek the death penalty. Two of the bases alleged in the notice were that "the murder was committed in a cold, calculated and premeditated manner" (720 ILCS 5/9-1(b)(11) (West 2004)) and that "the murder was intentional and involved the infliction of torture" (*id.* § 9-1(b)(14)). These two allegations would encompass the broader standard that defendant's conduct was brutal and heinous. Thus, the State did provide written notice that it intended to seek an enhanced sentence due to the nature of defendant's conduct.

¶ 34 Moreover, the State's ability to seek an extended term based on the brutal and heinous nature of the offense was an express condition of the State's taking the death penalty off the table. Consistent with the agreement, at the plea hearing, defense counsel, in defendant's presence, stipulated to the brutal and heinous nature of the offense. The court admonished defendant that

9

the possible sentences included natural-life imprisonment. Defendant said that he understood. Again, at the sentencing hearing, the court stated that the possible sentences included natural-life imprisonment based on the defense stipulation that defendant's conduct was brutal and heinous.

¶ 35 Defendant filed motions to withdraw the plea and reconsider the sentence. He pursued a direct appeal. At no time did he claim that he was not aware that the State intended to seek an enhanced sentence. Under these circumstances, defendant was well aware that the State was seeking an enhanced sentence and the State's failure to file a written notice to that effect was a mere formality that defendant waived by pleading guilty.

¶ 36 Defendant seems to take the position that "brutal and heinous murder" is a distinct offense such that his guilty plea to "ordinary" first degree murder did not constitute a plea to this offense. As noted, a defendant can plead guilty to even a nonexistent offense and the plea will be valid as long as he receives some consideration. Here, the State agreed not to seek the death penalty and to dismiss 17 additional charges. Thus, defendant received consideration and his plea was valid even though the indictment did not contain all the information he would now prefer.

¶ 37 In addition, this court has rejected the contention that seeking an enhanced sentence on the basis of brutal and heinous conduct adds an additional element to the offense. In *People v. Crutchfield*, 353 Ill. App. 3d 1014, 1024 (2004), we found that the State's notice to the defendant that it intended to prove the brutal-and-heinous enhancement factor at trial did not convert that sentencing factor into an element of the charge. Thus, we have already rejected defendant's argument that the inclusion of this enhancement factor somehow created a new offense.

¶ 38 Our conclusion that defendant's sentence was proper essentially disposes of the issues raised in his petition. OSAD discusses individually some issues that arguably do not implicate the State's alleged failure to comply with section 111-3(c-5).

¶ 39    Defendant claimed in his petition that plea counsel failed to stress the importance of meeting with the probation department interviewer in person, and that he only refused to meet with the interviewer because jail staff required him to wear restraints and a spit mask without justification. " 'To establish that a defendant was deprived of effective assistance of counsel, he must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result.' " *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)).

¶ 40    We rejected this precise claim on direct appeal and thus it is barred by *res judicata*. *Edwards*, 2012 IL 111711, ¶ 21. In any event, the record does not show that plea counsel failed to advise defendant of the importance of the PSI process. Plea counsel testified that he met with defendant several times, as well as talked to him on the phone and wrote him letters, and that he felt as prepared as possible for the sentencing hearing. Additionally, there was evidence at the sentencing hearing that defendant had a history of uncooperative and potentially violent behavior toward jail staff, and there was at least some justification for the restraints of which defendant complained.

¶ 41    In his response, defendant contends that jail officials lied about his alleged violent behavior, but the record contains no evidence of this. A postconviction petition "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2020); *People v. Collins*, 202 Ill. 2d 59, 67 (2002). Defendant mentions a federal civil case, *Davis v. Madison County*, but the record does not contain a judgment or any other documents from that case conclusively proving defendant's allegations that jail personnel lied about his disruptive behavior.

11

¶ 42    Defendant's claim in his response that defense counsel "abandoned" him at a critical stage of the proceedings appears to be largely a rehash of his previously rejected claims that counsel were ineffective for failing to advise him that it was important to cooperate with the PSI process.

¶ 43    Defendant's remaining claims, that the court considered an improper factor at sentencing, that the court did not properly admonish him per Rule 402, and that defense counsel's Rule 604(d) certificate was faulty, are all based on the premise that a natural-life sentence was improper because the State did not provide him with a redundant notice of its intent to seek such a sentence, and we reject them for that reason.

¶ 44                                    CONCLUSION

¶ 45    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 46    Motion granted; judgment affirmed.